MARY PARSONS, by next friend, *v.* G. W. KINZER *et al.*

1. CHANCERY PRACTICE AND PLEADINGS. *Persons of unsound mind.* *Suit by next friend.* A bill may be filed in the name of a person of unsound mind by next friend, either before or after inquisition, if there be no committee or guardian.

2. WILL. *Construction.* A father having only two children, a son and a daughter, the latter being of weak mind, sold to his son a tract of land for $7,500, taking his 75 notes for $100 each, payable at intervals of a year for 75 years, and on the same day made his will, by the third item of which he bequeathed as follows: "I also direct that my daughter, Mary Parsons, have seven thousand and five hundred dollars' worth of notes, or the proceeds of the same, that I now hold on Elijah P. Parsons, to be paid in different payments, the first note becoming due on the first day of May, 1862, for one hundred dollars, due on the first day of May in each year annually, until the above named sum is paid to her or the heirs of her body." Held that the notes themselves passed, under the will, to the daughter.

3. SAME. *Same.* *Election by the Court.* The testator's son, to whom the residue of this estate was given by the will, having died leaving a wife and children, this bill was filed against his personal representative, widow and children, for a declaration and enforcement of the daughter's right. Held that complainant had a lien on the land for which the notes were given for their payment, which was fixed by the filing of the bill; that, whether any children she might have were entitled to an interest in the legacy or not, complainant might have the value of the notes realized under the Code, sections 3328, 3719; that it was manifestly to the interest of the infant children of the son, that this value should be fixed upon the land in lieu of the 75 years annual payment of $100 cash, and the court would so elect for them, and that the enforcement of the debt might be suspended to suit the convenience of the parties by the payment of interest. Held, also, that while the son's widow, to whom a part of the land might have been allotted in dower, could not be affected by this change, she would be bound to keep down her proportion of the annual burden of $100, during the existence of the dower estate.

Parsons *v.* Kinzer.

4. APPEAL FROM A DECREE. *Rights of parties who do not appeal.* Under the provisions of the Code, secs. 3155, 3159, if a decree adjudges independent rights, it will remain in force as to those parties who do not appeal, and be vacated as to other parties who do appeal, and *e converso* where the proper decree will necessarily affect the parties who have not appealed, the appellate court will determine the whole case as it stood before the hearing below, although an appeal be taken only by one party.

### FROM MAURY.

Appeal from the Chancery Court at Columbia. W. S. FLEMING, Ch.

W. S. RAINEY for complainants.

N. R. WILKES for defendants.

COOPER, J., delivered the opinion of the court.

On the 20th of March, 1861, Bennett G. Parsons conveyed to his only son, Elijah P. Parsons, by deed in fee, reserving to himself a life interest, two tracts of adjoining land, containing about one hundred and sixty-two acres, for the consideration of $7,500, secured by seventy-five notes of the son for $100. each, payable respectively on the 1st of May, 1862, and annually thereafter on the same day of each succeeding year until the 1st of May, 1936, without interest.

On the same day, Bennett G. Parsons made his will, by which, after providing for the payment of his debts, he gave to his only daughter $100 in money, a horse, and some articles of household furniture, and then made the following singular bequest: "Item 3. I also direct that my daughter, Mary Parsons, have

seven thousand and five hundred dollars' worth of notes, or the proceeds of the same, that I now hold on Elijah P. Parsons, to be paid in different payments, the first note becoming due on the first day of May, 1862, for $100, due on the first day of May in each year annually until the above named sum is paid to her, or the heirs of her body." The residue of his property, subject to the dower of his widow, the testator gave to his son.

The testator died on the 15th of August, 1862. His will was duly proven and recorded, and the executor qualified according to law. He administered the estate by paying the debts, which were few in number, and executed the will by delivering to the testator's daughter the money and personal chattels bequeathed, and also the notes of the son for $7,500, so taken as aforesaid, and the residue of the estate, after the allotment of dower, to the son.

The testator's daughter, who was about forty-two years of age at her father's death, has always been a person of weak mind, though only recently so found to be by the verdict of a jury. She lived with her brother, after her father's death, as a member of his family. He died in July, 1872, intestate, leaving a widow and six children. G. W. Kinzer was appointed and qualified as the administrator of his estate. Dower in his lands was allotted to his widow, who afterwards intermarried with L. A. Goslin. Mary Parsons, the testator's daughter, after her brother's death, lived for a time with his widow, and afterwards in a house on the dower land, near to the residence of Goslin and

Parsons *v.* Kinzer.

wife, doing her own house work, but being furnished with provisions and fuel by them at a charge of $90, and afterwards of $70 a year. The administrator paid the annual notes of his testate as they fell due, partly to Goslin for rent and supplies, and partly to Mary Parsons herself.

This bill was filed on the 31st of March, 1877, after the inquisition finding her of unsound mind, by Mary Parsons through a next friend, to have a construction of the third item of her father's will, and the enforcement of her rights thereunder. The personal representative, widow and children of Elijah P. Parsons, together with the husband of the widow, are made defendants. The Chancellor, in his decree, says that the pleadings requiring him to construe the third item of the testator's will, he is of opinion and decrees that complainant " is entitled to the present value of said notes out of the land left by Elijah P. Parsons," and to a lien on said land for their payment.

Upon a reference to the master, the " present value" of the notes, on the 1st of May, 1878, was found to be $2,666.96. Allowing the excess over $2,500 for necessary expenses, the Chancellor made the interest an annual charge at six per cent, and ordered the children to pay $110 of the amount, and Goslin and wife $40. Goslin and wife alone appealed.

The defendants have raised no point as to the right of the complainants to file such a bill by next friend. It has been held by Chancellor Zabriskie, of New Jersey, that a bill cannot be filed by a person of unsound mind by next friend. *Dorsheimer* v. *Roorback,*

3 C. E. Green, 440. And some of the English rulings tend to limit the character of cases in which such a suit can be brought, or the extent of the relief obtainable. *Halfhide* v. *Robinson,* L. R. 9 Ch. App., 373 ; *Beall* v. *Smith,* L. R. 9 Ch. App., 85. But the text writers concur in the statement that a person of unsound mind may sue by next friend, either before or after an inquisition of lunacy, at any rate where there is no committee or guardian, and the weight of authority is in accord. 1 Dan. Ch. Pr., 83, 5th Am. Ed.; *Jones* v. *Loyd,* L. R. 18 Eq., 265 ; *Higginson* v. *Hall,* 10 Ch. Div., 235. The practice has been recognized in this State. *Stephens* v. *Porter,* 11 Heis., 341, 348.

The Chancellor was of opinion that the will gave the complainant the " worth " or value of the notes, or entitled her to an election between their " worth " and their " proceeds" as they fell due, and treating her as incompetent to make an election, that the court would elect for her, and under the circumstances, limit the election to the date of the decree. In either view, the bequest would thereby become a money legacy, and the notes remain the property of the testator's estate. Strictly speaking, the executor should be before the court, and the testator's estate under its control, in order to justify the decree. For the court might otherwise deprive the complainant of a positive advantage, before securing a better one. By the filing of the bill, the notes became a lien, and may, by decree, be fixed as a permanent lien on the land for which they were given, while the legacy would, unless

secured in this case, become a lien on nothing. It would never do to lose the substance for the shadow. A next friend cannot elect for a person under disability, and the court will not, unless the record enables it to make an intelligent and effectual election. *Haggard* v. *Benson,* 3 Tenn. Ch., 268. It is true no exception is taken to the want of a necessary party, and the administrator and children of Elijah P. Parsons, in their answers, concede that the property of the testator, both real and personal, was divided, and allotted in accordance with the will; that is, they add, "Elijah P. Parsons received all of the estate of the said Bennett G. Parsons, except the dower allotted to his widow, the seventy-five notes and small bequests to complainant." The admissions would, however, only be binding on the infants, if the court should be of opinion that their rights were not prejudiced thereby, and the admissions of neither answer would be conclusive upon the widow and her husband. It is not seen how the bequest to complainant, treated as a money legacy, could be a lien on any property, much less how it could be made a permanent charge upon the lands "left by Elijah ·P. Parsons," upon which the defendants could be required to pay interest. The tract of one hundred and sixty-two acres constituted no part of the testator's estate at his death, and could not be charged with the bequest treated as a money legacy. Nothing that the testator has said in his will could affect the rights of the purchaser and his heirs, and clearly the widow of Elijah would take that land, so far as it may be embraced in the dower, free from

any liability for a money legacy under the will, while she might hold the same land subject to the vendor's lien for the payment of the notes. So, although she may be bound to keep down the burden of the annual notes in the proportion in which the tract of one hundred and sixty-two acres is embraced in her dower, neither she nor her husband can be made to pay any portion of an annuity based on a money legacy under the testator's will. The testator's lands, after the exhaustion of the personalty, might be subjected to the satisfaction of the legacy, and that part of her dower which embraces land devised to her husband, might be compelled to bear its proportion of the burden. But we are not aware of any principle upon which her lands can be mortgaged, against her will, or charged with an annuity.

The Chancellor's decree, the equity of which is evidenced by the fact that the widow's own children have not appealed from it, may be substantially sustained upon other grounds. However singular it may appear, the testator made the contract of sale to his son expressly with a view to the condition of his daughter, and clearly intended by his will to provide for her a fixed annuity, even if she should live to extreme old age. He may have thought the son would take care of her for many years, and that afterwards the notes might be utilized for her support. Whatever may have been his ideas, the will gives her the notes themselves until the entire sum "is paid to her, or the heirs of her body." As a legatee she is a privy in title with the testator, and the vendor's

lien enures to her benefit.     *Smith* v. *Hibbard*, 2 Dick.,
730; 1 W. & T. Lead. Cas., 486.     Whether the
heirs of her body, if she ever has any, would
take any benefit under the bequest, it is unnecessary
to consider.     Beyond all question, she is entitled to
the notes as they fall due, for her annual support,
and their value may be realized and the income- thus
appropriated, if more conducive to her comfort.     Code,
sections 3328, 3719.     The evidence makes it evident
that this course is advisable, although it may be not
absolutely necessary.     It is equally clear, that it is
for the interest of the children of Elijah P. Parsons
that the notes which are, by the filing of this bill,
made a lien on the tract of land of one hundred and
sixty-two acres for which they were given, should not
be sold to third persons, to become a lasting burden for
over half a century on the land.     We think it man-
ifestly for their interest that the actual value of the
notes, as ascertained by the Chancellor, should be
charged upon the land, and, instead of selling the
land and re-investing the proceeds, that they should
be allowed to pay the interest until some change of
circumstances may render a different arrangement de-
sirable, or they should voluntarily choose to remove
the incumbrance by a payment of the debt.     We
place our decision upon the ground, that the arrange-
ment is mutually for the interest of the complainant
and the children, and that the one being under the
disability of weakness of mind and the other of in-
fancy, the court may act for them.     A decree will,
therefore, be drawn up declaring that the complainant

has a vendor's lien on the tract of one hundred and sixty-two acres for the security of the notes bequeathed to her which remain unpaid; that it is to the mutual interest of both parties that these notes be reduced to their present value as fixed by the Chancellor, and that value declared to be a lien on the land, not to be enforced so long as the interest is paid, until further order.

Except by consent of Goslin and wife, no part of this interest can be charged upon them, nor can any part of the debt, credited by reducing the notes to their present value, be charged on the dower lands. The widow took so much of the tract of one hundred and sixty-two acres as may be embraced in her dower, subject to its proportion of unpaid purchase money according to the contract, that is payable in annual instalments of $100 each. All she can be compelled to do is to keep down the burden of these notes to the extent of the proportion which the dower on the one hundred and sixty-two acre tract may bear to the residue of the tract. *Williams* v. *Woods*, 1 Hum., 408; *Featherston* v. *Boaz*, 1 Leg. Rep., 224. The record does not show whether any, and what part of that tract is included in the dower. The liability of Goslin and wife to this extent may be declared by the decree, and a reference had to ascertain the proportion. And as these children will have assumed the burden of the entire interest on the present value of the notes, they may have a decree against Goslin and wife, during the existence of the dower estate, for such part

of the annual note of $100 as they may be charged with upon the principle indicated.

It is argued on behalf of the infant defendants, that neither they nor the complainant have appealed; that the complainant cannot, therefore, assign error in the decree, and it must ·stand as between them. But the Chancellor's decree fixes the value of the notes as a charge upon the lands of the infants. If we reverse the decree so far as it undertakes to charge Goslin and wife with any portion of the annual interest, the debt will remain against the land and be enforced, unless they, the children, pay the whole interest. That view of the law of chancery appeal would not be to their advantage.

By the Code, section 3155, " Either party dissatisfied with the judgment or decree of the Circuit or Chancery Court in a matter of equity tried according to the forms of the Chancery Court, may appeal to the Supreme Court and have a re-examination in that court of the whole matter of law and fact appearing in the record."

By section 3159, " Any one or more of the parties to a judgment or decree may pray and obtain an appeal therefrom, the judgment remaining in full force against such of the parties as do not appeal."

Upon examination of the article of the Code in which section 3159 is found, it will be seen that its provisions apply to all appellate proceedings at law, or in equity, and the words " pray and obtain an appeal" of that section, really mean, pray and obtain any process by which the cause may be brought into the

appellate court. That section applies principally to
judgments at law, and such decrees as approximate in
their nature to judgments. Taking the two sections
cited together, this court has drawn the distinction
between decrees, "in a matter of equity," severable in
their nature, and decrees which would admit of no
such separation. If a decree adjudges independent
rights, it will remain in force as to those parties who
acquiesce therein, and be vacated by the appeal of
other parties. And *e converso*, where the proper de-
cree will necessarily affect the parties who have not
appealed, this court, although the appeal be taken only
by one party, will determine the whole cause as it
stood in the court below before any decree was ren-
dered. *Grubb* v. *Browder*, 11 Heis., 299. The very
nature of a chancery suit proper requires the presence
of all parties interested, and a final determination of
their rights.

In the case before us, a decision on the right of
complainant to enforce her rights under the testator's
will, either against the estate of the testator, or the
estate of Elijah P. Parsons, involves necessarily the
consideration of the nature of her demand, and the
relative rights of all the parties growing out of its
enforcement. The proper decree is not severable, for
it involves, in addition to the rendition of a mo-
neyed judgment, the proportioning of the burden on
the property for which it was contracted, or in which
the parties have different interests.

The decree will be modified in accordance with this
opinion and the necessary reference made, for the ex-

ecution of which, as well as for the purpose of retaining the cause for farther order, the case may be remanded to the Chancery Court. The costs of this court will be paid one half by the appellants, the other half by the children; the costs below as directed by the Chancellor.