STATE OF TENNESSEE ex rel. et al.

*v.*

GLENN YOAKUM et al.

*(Knoxville,* September Term, 1956)

Opinion filed December 7, 1956.

182

R. R. KRAMER, GAINES A. TYLER, JR., KRAMER, DYE, McNABB & GREENWOOD, Knoxville, for appellants.

J. R. KETRON, A. G. SHUMATE, G. HOWARD NEVILS, Tazewell, for appellees.

HARRY PHILLIPS, Nashville, for Tennessee Education Association, *amicus curiae.*

Mr. Justice Burnett delivered the opinion of the Court.

This suit asks for a judicial construction, under the Declaratory Judgment Act, of Section 49-1411, T.C.A., which reads as follows:

"Transfers within system. — The superintendent, with the approval of the board, when necessary to the efficient operation of the school system, may transfer a 'teacher' from one location to another within the school system, or from one type of work to another for which he is qualified and certificated."

The construction of this section is sought after making a number of allegations against the majority of the school board of Claiborne County of arbitrarily, capriciously and contumaciously electing and transferring teachers who held a tenure status in Claiborne County from schools where they had been assigned by the superintendent to other schools in the County which were not approved for these teachers by the County Superintendent of Schools.

The bill charged (this is supported by copies of the minutes of the board) that the defendants who constituted a majority of the County Board of Education undertook by their vote to transfer some eighty-odd teachers who had the tenure status contrary to the recommendation of the County Superintendent, and in such manner as to amount to a discharge or elimination of such teach-

ers from the system. The factual background of why and how these teachers are to be transferred is averred in the bill. It is also charged that such changes were not made for the betterment of the schools but was prompted by malice and for the purpose of revenge in some instances and to confer favors in others. Factual allegations are made to support these conclusions. The bill also avers that there are some two hundred teachers in the County and of this two hundred, eighty or more with tenure status were thus transferred. Attached to the bill are copies of the minutes of the meeting of the board on May 11, and 14, 1956, in which it is shown that the teachers holding tenure status had been recommended for re-employment in the positions that they had held during that current year or in the preceding year. This recommendation of the Superintendent was not followed and on a motion by one of the majority members who is a defendant hereto, he moved that his "slate" of teachers be elected. He, in this motion named a long list or a "slate" of teachers contrary to that as recommended by the Superintendent. This motion to elect a "slate" of this member was carried by the majority vote.

The bill was filed on relation of the State of Tennessee by nine teachers and other citizens of Claiborne County, Tennessee and by the minority members of the County Board of Education. Later the bill was amended by an order of the Chancellor and the District Attorney General was made a party complainant in an effort to extend the method of reviewing the matters alleged in the bill. The complainants among other things, prayed for, and were granted, an injunction restraining the Board of Education from assigning or transferring the teachers

who held tenure status without the recommendation of the County Superintendent of Schools.

To this bill the defendants demurred alleging in substance that the Chancery Court was without jurisdiction to entertain the bill. Also they filed with the demurrer a motion to dissolve the injunction.

Upon a hearing on this demurrer and motion the Court overruled both and the defendants were granted a discretionary appeal. The defendants also demurred to the amended bill making the District Attorney General a party complainant and by this demurrer raised objection to the mode of procedure followed by the complainants and questioned the Court's right of review of the action of the Board of Education in making transfers of teachers under the tenure within the school district.

At the hearing the case was argued by the respective parties and the Chancellor in a very able written memorandum opinion found in favor of the complainants and enjoined the action of the defendant Board. The Court in this opinion held that Section 23-2801, T.C.A., subsection (5), thereof gave the District Attorney General the right to join in this action and maintain it because the action affected the public. As said above after argument the Chancellor took it under consideration and rendered judgment for the complainant and allowed a discretionary appeal.

It is said that the Chancellor erred in his declaration and interpretation of Section 49-1411, T.C.A. above quoted, and two that the Chancellor erred in holding that that Court had jurisdiction to review an action of the Board of Education in transferring teachers, and three, that it was error to hold that it was proper procedure in bringing this action in the Chancery Court.

The Teacher Tenure Law was enacted by Chapter 76 of the Public Acts of 1951 and is codified as T.C.A. 49-1401—49-1420. From what is said above it is obvious that this action is pitched primarily around the proper interpretation of Section 49-1411, T.C.A. above quoted. The Tenure Law generally provides that a teacher who has attained tenure status cannot be dismissed except for incompetence, inefficiency, neglect of duty, unprofessional conduct, or insubordination, all of which are defined in the statutes here referred to. When a teacher is dismissed, the superintendent is required to furnish written notice, together with a copy of the charges. The teacher has a right to demand a hearing before the County Board of Education, to appear at the hearing in person or by counsel and to present witnesses. Then by Section 49-1417, T.C.A. judicial review of the Board's decision is provided for by the Chancery Court.

Legislation of this kind has been enacted in many States of the Union. See Annotations 110 A.L.R. 791, 113 A.L.R. 1495, and 127 A.L.R. 1298. We in various opinions have recognized the validity of such legislation. The most recent case that has been considered by us was that of *Shannon v. Board of Education of Kingsport,* 1955 — Tenn. —, 286 S.W.2d 571, wherein the present Chief Justice prepared the opinion for the Court.

The Supreme Court of Minnesota in the case of *McSherry v. City of St. Paul,* 202 Minn. 102, 277 N.W. 541, 544, gives a very comprehensive statement of the purposes of the tenure law. Among other things it is said:

"Plainly, the legislative purposes sought were stability, certainty, and permanency of employment on the part of those who had shown by educational at-

tainment and by probationary trial their fitness for the teaching profession. By statutory direction and limitation there is provided means of prevention of arbitrary demotions or discharges by school authorities. The history behind the act justifies the view that the vicissitudes to which teachers had in the past been subjected were to be done away with or at least minimized. It was enacted for the benefit and advantage of the school system by providing such machinery as would tend to minimize the part that malice, political or partisan trends, or caprice might play. It established merit as the essential basis for the right of permanent employment. On the other hand, it is equally clear that the act does not impair discretionary power of school authorities to make the best selections consonant with the public good; but their conduct in this behalf is strictly circumscribed and must be kept within the boundaries of the act. The provision for a probationary period is intended for that very purpose. The right to demote or discharge provides remedies for safeguarding the future against incompetence, insubordination, and other grounds stated in the act. The act itself bespeaks the intent. Provisions for notice and hearing, the requirements of specified causes for discharge or demotion, are indicative of the general purpose.''

The very able argument is made here, as was in the Chancery Court, that Section 49-1411, T.C.A. (copied at the outset of this opinion) conferred on the superintendent powers that are directory only and are not mandatory because the final approval and the actual transfer of teachers rests with the Board regardless of the recommendation that may be or may not be given by the super-

intendent. In support of this argument the defendant cites various sections of the Code in reference to the administration of the educational system of the State. Among others is Section 49-214, T.C.A. which is in part:

"Duties of county board.—It shall be the duty of the county board of education:

"(1) To elect principals, supervisors, teachers, attendance officers, clerical assistants, and other employees authorized by this title, and to fix salaries for such authorized positions according to the provisions of this title; and to make written contracts with all employees. No member of the county board of education shall be eligible for election as teacher, or any other position under the board carrying with it any salary or compensation. * * *

"(8) To dismiss teachers, principals, supervisors, and other employees, upon sufficient proof of improper conduct, inefficient service, or neglect of duty; provided, that no one shall be dismissed without first having been given in writing due notice of the charge or charges and an opportunity for defense."

And then further Section 49-1313, T.C.A., which in part is:

"It shall be the duty of the board of education of each county, city or special school district to elect and assign all public school teachers, principal-teachers, and other school personnel on or before the 15th day of May next preceding the school year for which such personnel shall be employed. * * *"

Then Section 49-224, T.C.A. provides:

"It shall be the duty of the county board of educa-

tion to assign to its county superintendent the following duties:"

Then follow thirty specified statutory duties which the board of education assigns to its superintendent. Among these duties are:

 "(6) To make such recommendations to the county board of education as he deems for the best interest of the public schools, but in no case shall he have a vote on any question coming before said board. * * *

"(10) To recommend to the county board of education, supervisors, teachers, clerical assistants, and other employees in the county schools. * * *

"(12) To assign teachers to the end that the best interests of the schools may be promoted thereby, pending the meeting and approval of the county board of education."

 Immediately preceding these quoted sections are provisions for the election of the county board of education, term of years, and qualifications, etc. In this Chapter of the Code on Education and county administration also is Section 49-222, T.C.A., which provides for the election of the county superintendent by the county court—for the qualifications of the superintendent—commencement of terms, etc. And then follows Section 49-223, T.C.A. which provides that where the counties have a private act for the purpose that the superintendent may be elected by popular vote. Thus it is seen that the superintendent of county schools for this State is not an employee of the school board but that the school board does by statute assign and designate certain duties to the county superintendent. Among other duties, in addition to those listed in Section 49-224, T.C.A. above re-

ferred to, Section 49-219, T.C.A. provides that the chairman of the county board and the county superintendent shall be the executive committee of the county board of education. Thus we find that the dominating characteristic of these statutes above referred to is that the county school board of the several counties are given general charge of all public schools in that county. At the same time this school board and the county superintendent are separate. The school board is elected by the people. The superintendent may be under a special act but normally is elected by the county court and thus there is a separation between the two. Yet there is the general tenor of the statutes creating the board providing what they shall assign to the superintendent and placing the final power as to the management of the schools in that board.

Clearly these statutes mean and provide that the school board may always seek the superintendent's advice, and in some instances must have it, as to the various qualifications of teachers, etc., which clearly fall within the specialized knowledge of the superintendent. Still the power rests with the school board to elect such teachers as the superintendent may recommend.

The duties of the superintendent are highly important but they do not with respect to essential features of school management override the authority of the school board. Naturally the superintendent's advice will be given much consideration, but the ultimate responsibility and the finality as to choice rests with the school board. It may act on its own sound judgment as to what is required by the public welfare, and contrary to advice from any source, even from the superintendent of schools. The school board is still the master and not the

servant. This is clearly the conclusion that must be drawn from the statutes above quoted and referred to.

We then come to the statute in the Code governing teachers' tenure above referred to and this statute is also listed under education and follows that above quoted about the duties of the board, the superintendent, etc. We then of course come to the Section 49-1411, T.C.A. in which the Chancellor hold that the superintendent must recommend a transfer and that this must be done with the approval of the board and that such action on his part was mandatory. The language that is used by the Legislature in this Code Section differs from that in the preceding sections above quoted which refer to the duties of the superintendent. This section starts out with: "The superintendent, with the approval of the board, when necessary", etc., may transfer a teacher, etc. Clearly this language reading it alone indicates an entirely different thing from that providing for the duties of the superintendent hereinabove referred to. It becomes necessary for us to reconcile and read the two together to get at the intention of the Legislature.

■ ■ There is no universal rule that can determine directory provisions of a statute under all circumstances as distinguished from those which are mandatory. In solving this question, as in all questions of statutory construction, the main object is to see what the legislative intent was as disclosed by the provisions of the act in relation to the subject of legislation and what was the general purpose to be accomplished. See 50 Am.Jur., p .47, Sec. 24, et seq. This being the true rule of interpretation we must use this language in the light of the preceding statutes making up the board and setting forth the duties of a superintendent with general knowledge of the

fact that from these things ordinarily the superintendent, one trained or having a specialized training in the whole county school system, should be the one and is the one normally to recommend to the board who are not specialized in the conduct and management of schools but who are reputable citizens with good common sense and judgment and who have the interest of all the children of the county at heart. When we look at it from this standpoint it was perfectly natural for the draftsman of this tenure statute to say that the superintendent when he thought it was necessary would change teachers from one place to another, that is when it was for the best interest of the schools and all combined but this of course is done with the approval of the board. There is no change in the legislative intent here from other statutes creating the board and fixing duties of the superintendent of schools. We therefore are forced to the conclusion that this language in Section 49-1411, T.C.A. is directory only and the board in the last analysis must take a final action thereon.

The Legislature being made up of reasonable men recognized the makeup of our county school systems and that school superintendents and boards must be left with latitude and discretion in assigning and transferring teachers within the school system. No teacher under the tenure law is guaranteed continuity of employment in a particular assignment or school. The general authorities all over the country are to this effect. Appeal of *Houtz,* 361 Pa. 537, 65 A.2d 420; Appeal of *Wesenberg,* 346 Pa. 438, 31 A.2d 151; *Board of Education of Bath County v. Hogge,* Ky., 239 S.W.2d 459; *Werlock v. Board of Education,* 5 N.J.Super. 140, 68 A.2d 547, and others that might be cited.

It is very forcibly argued (the Chancellor accepted this argument) that this act preserved the right of local officials to transfer a teacher from one position to another under jurisdiction of the same board only by the joint action of the superintendent and the board of education. It is likewise said that one cannot act without the other. It seems to us that this conclusion would bring about intolerable results under certain situations wherein either the board or the superintendent refused to move. Such a result clearly would not be for the best interest of the schools and in view of what we have said heretofore we do not think that this was the intention of the Legislature. Someone must have a final say. True it is the recommendation should be made by the superintendent who knows more about such things, but at the same time the board were elected for this purpose among others and are to have the final say as to whether or not this recommendation is carried out.

It is next argued that the Chancery Court was without jurisdiction to review the transfer of teachers. This assignment and argument is based upon the fact that the complainants have failed to complete administrative procedure provided by the tenure act. We in this State follow this rule, that is, where there is an administrative procedure provided by statute the employee or one claiming to have been injured must first comply with the provisions of the administrative statute. See *State ex rel. Jones v. City of Nashville,* 198 Tenn. 280, 279 S.W.2d 267. We likewise held in that case that the mere fact that administrative authorities would probably deny relief asked by a civil service officer or employee was no excuse for the employee not exhausting the administrative remedies before resorting to the courts.

"The courts will not interfere with the exercise of discretion by school directors in matters confided by law to their judgment, unless there is a clear abuse of the discretion, or a violation of law. * * * Relief may be had where the action of the school board is arbitrary, wilful and malicious, and amounts to actual fraud." 47 Am.Jur., p. 325, Sec. 44.

The Teacher Tenure Act under consideration provides that tenure teachers cannot be discharged except for the reasons heretofore set forth and upon written notice and an opportunity to be heard. The general meaning of this act from one section to another is that if a teacher be guilty of some of these infractions and then that the superintendent give them notice as required by statute they appeal to the school board in the final analysis. If the school board decides against the teacher then under Section 49-1417, T.C.A. the teacher under permanent tenure status has a right within 30 days to petition the Chancery Court. Clearly if these teachers in the instant case had violated some of these rules on which they could be demoted or dismissed and the statute had been complied with and they had had notice and had an opportunity to appeal unquestionably it would be our judgment that they must follow the administrative remedy before proceeding further, but in this case the majority of the board takes this action and transfers some eighty-odd out of two hundred teachers without apparent rhyme or reason. Under the allegations of the bill facts are sufficiently averred which clearly show that the action of the board was an arbitrary, capricious and contumacious action. Under the demurrer herein of course all well plead facts must be taken as true. This being

true these teachers had the right to bring action against the school board. See 47 Am.Jur., *supra.*

■ While unquestionably the school board along with the superintendent was given the right, the latitude and discretion of assigning and transferring teachers within the school system this must be done for the good of the schools. The teacher should be dealt with considerately. Ordinary fairness requires that he or she be allocated to a certain school either at the time of his selection or shortly afterwards so that they may intelligently contract or refuse to contract with the board. And when the teachers are thus transferred from one place to another it must be exercised in a reasonable manner. The best interests of the school must be intended. Where it is shown that there is an arbitrary or capricious use of power being exercised by those in authority the courts will not tolerate the use of this power. The presumption of good faith which is ordinarily accorded to officials of the kind cannot prevail and stand where it is shown as is shown by the allegations of fact here of an arbitrary and capricious use of power in transferring these teachers.

■ The law will not require these teachers to exhaust an administrative remedy when to do so under the averments of the facts herein would be a useless thing. When it is shown that it would be useless, the board who finally is to act on their appeal has already acted, then these parties may ask the assistance of the courts in the vindication of their rights.

A number of cases from other jurisdictions supporting the statement above made will be found by reference to the American Jurisprudence, supra. In one of these

cases, *Neal v. Board of Education,* 116 W. Va. 435, 181 S.E. 541, 542, a school principal who held a contract as principal of a high school was transferred just before school opened to another school in another district, seventeen miles further from his home (a number of other teachers being also reassigned). The West Virginia Court held that the transfer was arbitrary and capricious growing out of a personal matter between the principal and the superintendent of schools and was therefore unauthorized. The Court said:

"The presumption of good faith which is ordinarily accorded an official act cannot prevail in this case. * * The wholesale shifting of teachers on August 20th is alone sufficient to shake the presumption of good faith, and the presumption falls before the uncontroverted evidence * * *."

In the instant case we have the allegations that a number of these teachers were transferred forty miles away from their homes, others were transferred over mountains where it was impossible to get to in the snow and slush from where they would have to go and eighty-odd teachers were transferred by this so-called "slate" of one of the majority members of the board. Clearly under this state of facts we think the Chancellor was eminently correct under authority of the court of equity and the injunctive powers which that court has. See Gibson's Suits in Chancery, Secs. 800, 804. The Chancellor thus properly granted the injunction on the record as it now stands before us. If this state of facts (these things are averred in this declaration) can be successfully established or can be controverted by the taking of proof the cause will be remanded for answer and for

proof. Pending this the teachers, as recommended on May 11th by the superintendent of the county schools of Claiborne County, will proceed to the schools where they were recommended for by the superintendent. If no further pleading is to be had and no proof taken on the issue a final judgment may be put down here in accordance with this opinion. The costs of the cause are taxed to the appellants.

In the view we have taken of the question it is not necessary that we determine the *Quo Warranto* question as to the applicability of Section 23-2801, T.C.A.