WILLIAM SHERMAN MAYES, Appellant,

*v.*

DAN BAILEY et al., Appellees.

352 S. W. 2d 220.

(*Knoxville,* September Term, 1961.)

Opinion filed December 8, 1961.

FRANK MONTGOMERY, Knoxville, for appellant.

John P. Davis, Boyd Mason, Tazewell, for appellees.

Mr. Justice White delivered the opinion of the Court.

Appellant, complainant below, was a supervisor of the public schools of Claiborne County, Tennessee, from 1952 until September, 1960, at which time he was relieved of his duties as such supervisor by joint action of the superintendent of the the County school system and by vote of two-thirds of the members of the board of education of said County and was given the position of principal of a school in said County. Through his bill filed in the Chancery Court he sought an injunction or writ of mandamus restoring him to his former position. Answers were filed by all defendants, proof was introduced on the hearing, from all of which it appeared to the court that complainant was not entitled to the relief sought and his bill was dismissed. From this action of the Chancellor he has appealed to this Court.

The facts as shown by the record are as follows: Complainant has been a teacher in the public schools of Ten-

nessee since the year 1927 except for a time during World War II and has been the supervisor of schools of Claiborne County from 1952 until his reassignment in September, 1960. He is now the principal of a school located some 27 miles from where he lives and his salary has been reduced $500.00 per annum.

The complainant says that the board and the superintendent were motivated by politics in removing him as supervisor and in assigning him to the principalship of a school. This charge is denied by the board and by the superintendent. The chairman of the board testified as a witness for the complainant but he did not sustain the charge of the complainant that he had been fired by reason of politics. As a matter of fact, the chairman, Dr. Edds, testified:

"Q. There wasn't any skulldugery in that Board meeting was there? A. No sir.

"Q. Nothing underhanded or nothing wrong was there? A. If there was any planning it took place some where else.

"Q. That is there was just six members of the Board voted for Nevils and three voted for Mr. Mayes, isn't that correct, that's all that happened wasn't it? A. That's right."

The superintendent, Dan Bailey, testified that he proposed a list of teachers including Mr. James C. Nevils as supervisor to the board for election in a meeting held on April 10, 1961. He said he had discussed with the complainant the matter of reemploying him as supervisor and that Mr. Mayes contended he should be reelected. Mr. Bailey said that Mr. Mayes did not keep his records in

an efficient manner and that he did not keep the books and the reports with reference to the circulating library as they should have been kept and that such reports were not made to him on time. He testified that he suggested the transfer of Mr. Mayes because he thought it was best for the school system and such transfer was not made for any political reasons. Complaints have been lodged with the superintendent against the supervisor by other teachers in the County school system to the effect that he did not carry through the work that he should have done about certain matters and that he failed to complete certain forms that he should have completed. Mr. Bailey also testified that Mr. Mayes was negligent in his duties and there were things he should have done he did not do and it was for these reasons that he recommended that he be transferred for the good of the school system.

The minutes of the meeting of the Claiborne County Board of Education held on Monday, April 10, 1961, were filed as an exhibit to the testimony of the witness Bailey. These minutes show that all members of the board, being nine in number, were present at the meeting. The minutes further show that the superintendent of schools, Dan Bailey, submitted a list of teachers to be elected for the school year 1961-62. The recommendation shows that William S. Mayes was to be the principal of Mason Bethel School and that Mr. James C. Nevils was to be the supervisor. After the recommendation was read the chairman, Dr. Edds, "moved to amend the motion to place in nomination the present supervisor, Sherman Mayes, the complainant herein, who has made application on our regular form to be elected to his present position as supervisor of the Claiborne County Schools for the year 1961-62." Upon consideration of this motion three members of the

board voted in favor of the amendment and six voted against the adoption of the amendment. Whereupon it was moved and seconded that the teachers as recommended by the superintendent be hired for the 1961-62 school year. Six members voted in favor of the motion and three against the motion. Nothing appears in the minutes showing any reason for the transfer of Mayes nor for his replacement by Nevils.

The Teacher Tenure Act passed originally by Ch. 76, Public Acts of 1951, has been the subject of some controversy, especially in relationship to the transfer of teachers. A teacher as defined by the Act, includes a supervisor. Therefore, complainant is a teacher within the meaning of the Act.

Sec. 49-1411 T.C.A. as originally enacted provided as follows:

"The superintendent, with the approval of the board, when necessary to the efficient operation of the school system, may transfer a 'teacher' from one location to another within the school system, or from one type of work to another for which he is qualified and certificated."

Our Court in an opinion prepared by Mr. Justice Burnett in the case of *State v. Yoakum,* 201 Tenn. 180, 297 S.W.2d 635, held that:

"Statute providing that a county superintendent, with approval of county board, may transfer a teacher from one location to another in the school system is directory only and county board can transfer a teacher without recommendation of the county superintendent and without his joint consent."

By Ch. 202, Public Acts of 1957, said Code section above, was amended by adding the words "such a transfer can be made only by the concurrent action of the superintendent and the board. The board shall not have authority to transfer a tenure teacher except upon the **recommendation** and with the approval of the superintendent; provided that the provisions of this section shall apply in those counties where the superintendent is elected by the county court or the board of education."

■ It results, therefore, that there has to be a meeting of the minds of the superintendent and the board and concurrent action on their part before a teacher may be transferred from one location to another in the school system or from one type of work to another for which he is qualified and certificated.

There have been other cases decided by our Court, including the case of *State ex rel. Gilliam v. Hendrixson,* 202 Tenn. 428, 304 S.W.2d 624, and in that case, the Court speaking through the late and distinguished Mr. Justice Swepston, said:

"Bill which sought to enjoin board of education from transferring teachers to another school and which stated that board had no charges or accusations against teachers and that board had no valid reason for effecting their transfers presented issued as to whether board's action was arbitrary."

This case was presented to the Court on a bill and demurrer. In that case the complainant alleged and charged that the action of the defendant was arbitrary and without just cause and against the interest of the public school system of DeKalb County and without con-

sideration of the teachers so transferred. Based upon such averments and the demurrer filed thereto, the Court further said:

"It seems perfectly obvious, therefore, that on this allegation, if the same be true, that there were no charges or accusations against the two teachers and that the defendant had no valid reason for effecting their transfers, then it must follow as a matter of course, that the action was arbitrary. Whether or not this allegation can be sustained by proof is a different question * *."

In the case at bar there has been a full and complete hearing on the charges as alleged in the bill and the Chancery Court has found against the complainant and dismissed his bill.

The statute plainly says that the superintendent, with the approval of the board, when necessary to the efficient operation of the school system may transfer teachers from one location to another within the school system or from one type of work to another for which he is qualified and certificated. In this case, there was a recommendation by the superintendent and two-thirds of the members voted in favor of such recommendation. The superintendent stated he believed that such transfer was in the best interest of the school system of Claiborne County.

■■ There is a presumption of good faith ordinarily accorded to public officials and quasi public officials and there is nothing in this record which would overturn this presumption. There are many matters affecting the proper discharge of the duties of such officials about which they, necessarily, are given discretion and unless such

discretion is abused, the courts ordinarily will not interfere.

To the same effect is the language contained in *State v. Yoakum,* supra, to-wit:

"The Legislature being made up of reasonable men recognized the makeup of our county school systems and that school superintendents and boards must be left with latitude and discretion in assigning and transferring teachers within the school system. No teacher under the tenure law is guaranteed continuity of employment in a particular assignment or school."

The trial court found that the officials were performing their duties within the proper limits and, therefore, had the right and authority under the facts to transfer the complainant. We believe that all the administrative requirements and the requirements of the law have been met in this case and it is our opinion that the Chancellor has rendered the proper decision. Therefore, his decree is in all things affirmed at the cost of the appellant.