STATE of Tennessee ex rel. Nesby Lee PEMBERTON, Petitioner,

v.

Dr. Ross H. WILSON et al., Respondents.

Supreme Court of Tennessee.

June 5, 1972.

J. H. McCartt, Wartburg, for petitioner.

Harry J. Joyce, Wartburg, Jess E. Pearman, Harriman, William C. Wilson, Knoxville, for respondents.

## OPINION

PER CURIAM.

This is a suit by a teacher for the writ of mandamus against the Chairman and members of the Morgan County School Board. The Chancellor granted the writ after an evidentiary hearing. Respondents perfected an appeal to the Court of Appeals. That Court reversed the Chancellor.

Petitioner filed a petition for certiorari in this Court. In her petition for certiorari she pointed out the Court of Appeals was without jurisdiction of the matter. T.C.A. Section 16–408.

We granted the writ on the sole ground the Court of Appeals did not have jurisdiction to entertain the appeal and should have transferred the case to this Court. Campbell County v. Wright, 127 Tenn. 1, 151 S.W. 411 (1912).

The matter has been argued at the bar of this Court. After a thorough reading of the record and an examination of the excellent briefs and authorities cited therein, we concur in both conclusions and reasoning of the Court of Appeals. The case is so fully and clearly stated in that opinion that this Court adopts and incorporates it in this opinion for publication.

■ However, assignment of error four in this Court was not considered by the Court of Appeals because the question proposed therein was not called to the attention of that Court. The assignment is as follows:

"The Court of Appeals erred in holding and finding that both parties appealed, the opinion on page 1 stating: 'The Chancellor granted the relief sought in the bill and the defendants have appealed.' The cause should have been transferred to the Supreme Court of Tennessee under the provisions of T.C.A. 49–

1417. The decree of the Chancery Court remains in effect as to the Morgan County School Board."

We are of the opinion there is no merit to this assignment of error. The record shows all defendants below prayed and were granted a broad appeal. Dr. Wilson perfected an appeal by filing an appeal bond. The School Board did not.

"If a decree adjudges independent rights, it will remain in force as to those parties who acquiesce therein, and be vacated by the appeal of other parties. And e converso, where the proper decree will necessarily affect the parties who have not appealed, this court, although the appeal be taken by one party, will determine the whole cause as it stood in the court below before any decree was entered." Parsons v. Kinzer, 3 Lea 342, 71 Tenn. 342 (1879).

This cause is not severable by its nature; and, therefore, the broad appeal perfected by Dr. Wilson brings up "the whole matter of law and fact appearing in the record." Wood v. Cooper, 2 Heisk. 441, 49 Tenn. 441 (1870).

We quote and adopt, as hereinabove stated, the opinion of the Court of Appeals, Western Section, written by Judge Nearn, and concurred in by Judges Carney and Matherne.

This is a suit brought in the Chancery Court of Morgan County in the name of the State of Tennessee on the relation of Nesby Lee Pemberton, a teacher in the Morgan County School System. A Writ of Mandamus was sought to reinstate relator, hereinafter termed complainant, to the position of Attendance Teacher from that of elementary Classroom Teacher, to which position she had been transferred by the concurrent action of the County Superintendent and the Board of Education of Morgan County.

The defendants herein are the County Superintendent and the members of the Board of Education of said county.

The complainant also sought in her Bill reimbursement for the difference in compensation between that of Attendance Teacher and that of Classroom Teacher for the school year 1969–1970.

The matter was heard according to the forms of chancery, that is, on deposition. The Chancellor granted the relief sought in the Bill and the defendants have appealed.

There is practically no factual dispute. The interpretation and application of the appropriate statutes governing the situation were determinative of the trial below and will be determinative of the appeal.

The position of Attendance Teacher is an administrative or supervisory position of county-wide scope and the Attendance Teacher is a member of the staff of the County Superintendent. Some of the duties of the position include taking the school census, investigation of all illegal pupil absences, and the assistance of students lacking sufficient wearing apparel by the cooperation with civic and welfare agencies to obtain these necessities in order to reduce pupil nonattendance, all under the supervision of the County Superintendent. The position does not require the teaching of pupils in a classroom.

The duties of a Classroom Teacher are exactly those which the name implies. It is not an administrative or supervisory position.

A common office, located at Wartburg, is furnished the Attendance Teacher, shared with other administrative and staff members of the school system. The common office adjoins the office of the County Superintendent.

Complainant has held the position of Attendance Teacher in the Morgan County School System for approximately 17 years prior to the 1969–1970 school year. Prior to holding the position of Attendance Teacher, she had been a Classroom Teacher for several years.

In the General Election of 1968, the complainant ran for the office of Superintendent of Morgan County Schools against the encumbent who is the defendant herein, Dr. Ross H. Wilson. Complainant lost the election.

Prior to the election, a congenial relationship existed among the staff members occupying the same or adjacent offices. After the election, the former congenial relationship between the complainant and the other members of the staff changed to one which can best be described as strained. The whole thing seems to have been set off by the display on the office bulletin board, the day after the election, by person or persons unknown, of a campaign poster or caricature of the complainant upon which had been drawn in a mustache and remarks written upon it which are unspecified in the record. The complainant was offended by the caricature and words took place between complainant and other staff personnel. Thereafter, for the remainder of the year, complainant withdrew from association with her fellow employees and, except when the situation required she speak to others in the office, she remained withdrawn. Dr. Wilson testified that, because of complainant's change in attitude and the resulting strained relationship between the staff personnel and the complainant, he advised her that her contract as Attendance Teacher would not be renewed at its termination. Complainant testified that the real reason for her transfer was the fact that she ran against Dr. Wilson in the election. All staff personnel testified that after the spat over the caricature, even though attempts to ameliorate the situation were made by them, complainant remained withdrawn and uncommunicative, which caused a strained relationship, an unharmonious office, and difficult working conditions. However, all agreed that she was competent in her work.

At the special School Board meeting for the election of teachers, held in April,

1969, for the coming school year, the defendant, Dr. Wilson, did not recommend that complainant be reappointed Attendance Teacher, but recommended for the good of the system that she be elected or appointed as Classroom Teacher at the Sunbright Elementary School. The School Board voted approval of the recommendation. Prior to the special election meeting, which was held at its usual annual time, no charges had been placed against the complainant and no notice of any change or hearing was given complainant. No charges were made against the complainant at the meeting of the Board. After consideration of the Superintendent's recommendation, the Board voted the change for the good of the system. It is the position of the complainant that notice of the Board's action, a list of charges, and a hearing thereon were statutory prerequisites before the Board could take the action that it did.

Complainant earned $860.00 less in the 1969–1970 school year as Classroom Teacher than she would have earned for that year as Attendance Teacher. However, as Attendance Teacher she would have been required to work about 20 days longer during the year than as Classroom Teacher. Also, since complainant's home is at Sunbright, she did not have to daily drive the 26 miles round trip from her home to Wartburg.

After the action of the Board was made known to complainant, she was tendered a contract for the coming year as a Classroom Teacher. Complainant accepted and executed the usual State of Tennessee form contract between teachers and the County Board of Education for the position of Classroom Teacher. The contract provided that the salary of Classroom Teacher would be "State Salary Schedule + Co. Supp." (State Salary Schedule plus County Supplement). The State Salary Schedule is a schedule of salaries to be paid teachers depending upon their scholastic attainment. The schedule is readily available to all. Contracts between teach-

ers and Morgan County have described the salary to be paid in the foregoing manner as far back as any witness could remember. The exact dollar payment is not specified in the contract. It is the position of the complainant that the difference in salary was unknown to her at the time of the execution of the contract, as she thought the salary would not be reduced, but as soon as the difference was learned and complainant became aware that she had been financially demoted, suit was filed. The record tends to substantiate this position of the complainant and the Chancellor so held.

The Assignments of Error are:

"1. The Court erred in ordering the issuance of a peremptory writ of mandamus to reinstate the complainant.
. . .

2. The Court erred in awarding a monetary recovery in favor of the complainant. . . ."

The provisions of the Tennessee Code which are the legal subject of this controversy are T.C.A. 49–1411 through 49–1416, subject to the definition of terms contained in T.C.A. 49–1401.

At the time of complainant's transfer, the pertinent provisions of Section 49–1411 T.C.A. provided as follows:

"Transfers within system.—The superintendent, with the approval of the board, when necessary to the efficient operation of the school system, may transfer a 'teacher' from one location to another within the school system, or from one type of work to another for which he is qualified and certificated. Such a transfer can be made only by the concurrent action of the superintendent and the board. * * *"

Section 49–1412 provides that no teacher may be dismissed or suspended except for specified grounds. Section 49–1413 provides that a teacher may be suspended during investigation of a case. Sections 49–

1414 and 49-1415 collectively provide that charges against a teacher are to be reduced to writing and filed with the Board and, if the Board is of the opinion that the charges warrant a dismissal of the teacher, notice of the Board's opinion and a copy of the written charges are furnished to the teacher. Section 49-1416 provides the manner in which the teacher shall have a hearing before the Board of the charges made against her.

Section 49-1401 defines the word "teacher" as used in the act as follows:

"(1) The word 'teacher' includes teachers, supervisors, principals, superintendents and all other certificated personnel employed by any county, city or special district board of education, for service in public, elementary and secondary schools in Tennessee, supported in whole or in part by state or federal funds."

The term "tenure" as used in the act is defined as:

"(4) The word 'tenure' indicates the statutory requirements, conditions, relations and provisions, in this chapter, under which a teacher employed by a board holds a position as a teacher under the jurisdiction of the board. Administrative and supervisory personnel shall have tenure as teachers and not necessarily tenure in the specific type of position in which they may be employed."

The thrust of Mrs. Pemberton's complaint is that she was transferred by the Board to a position of lower pay, without charges being made and without the opportunity afforded her for a hearing. That such transfer in such manner is in violation of the express requirements of the Code. Further, that the action of the Board not only contravened the applicable statutes, but was arbitrary, capricious and an exercise of bad faith.

It is the position of the defendants that in order for the Board to transfer a teacher from one position to another, it is not necessary to place charges, send notices, and afford a hearing to the teacher. Further, that the transfer of the complainant was not in contravention of the statutes as the statute provides that administrative and supervisory personnel shall have tenure as teachers only and not tenure in the particular administrative position to which they had been elected or appointed. The defendants strongly deny that the transfer of the complainant was an arbitrary or capricious act accomplished through bad faith but, on the contrary, contend that the transfer was made for the efficient operation of the school system.

There is no dispute over the fact that the complainant held tenure as a teacher. The real dispute is whether or not she held such tenure as administrative personnel of the staff of the County Superintendent, and whether the transfer from that position to another in the system would require the placing of written charges, notice thereof, and the affordance of a hearing before a transfer could be legally accomplished from the position of Attendance Teacher or administrative personnel to that of Classroom Teacher. The Chancellor held that the transfer of complainant to the position of Classroom Teacher at a reduction in salary amounted to a demotion and that such action required that written charges be preferred against her and a hearing on these charges afforded. As the Chancellor was of the opinion that complainant's transfer was accomplished in a manner contrary to the statutes, he ordered a Peremptory Writ of Mandamus issue reinstating complainant to her former position with an award of $1,720.00, representing the difference in pay for two years.

The reported cases cited to sustain the Decree of the Chancellor are: State v. Yoakum (1956) 201 Tenn. 180, 297 S.W.2d 635; State ex rel. Taylor v. Rasnake (1961) 209 Tenn. 229, 352 S.W.2d 427; Blair v. Mayo (1970), Tenn., 450 S.W.2d 582.

In the *Yoakum* case, supra, the nature of the action was one of declaratory judg-

ment for construction of T.C.A. 49–1411 as it then appeared. At that time, 1956, the statute was in different form than now. The appeal was from the action of the Trial Court in overruling a demurrer. The Original Bill charged that the Board undertook to transfer some 80 teachers in such manner as to amount to a discharge or elimination of such teachers from the system. Further, that the action of the Board was contrary to the recommendation of the County Superintendent. In overruling the demurrer, the Chancellor held *inter alia,* that a transfer could be accomplished only by the joint action of the Superintendent and the Board. The Supreme Court held that the Chancellor was incorrect in that part of his holding as it was the meaning of the statute and legislative intent that the Board could act, in the matter of transfers, without the concurrence of the Superintendent. However, the Supreme Court held that the Chancellor was correct in overruling the demurrer as the Original Bill unquestionably averred a state of facts which constituted a clear abuse of discretion on the part of the Board. Further, that the averments of the Bill showed that it would have been a useless thing for the complainants to have followed statutory administrative procedure and the Chancellor was eminently correct under the authority of a Court of Equity to grant the relief requested.

In discussing the Teacher Tenure Act, the Supreme Court stated:

"Clearly if these teachers in the instant case had violated some of these rules on which they could be demoted or dismissed and the statute had been complied with and they had had notice and had an opportunity to appeal unquestionably it would be our judgment that they must follow the administrative remedy before proceeding further . . ."

It is forcibly argued to this Court that such language by the Supreme Court is authority for the proposition that no "demo-tion" can be had without written charges and the affordance of a hearing.

We are of the opinion that the *Yoakum* case, supra, is distinguishable from the case at bar. First, no proof was heard in the case and the Original Bill averred facts which clearly showed "the action of the Board was arbitrary, capricious and contumacious" and "without apparent rhyme or reason". The Bill further averred that the act of the Board was an attempt to eliminate the teachers from the school system by transferring them to areas far from their homes, making it virtually impossible for them to reach their assigned schools during inclement weather. Second, the main point of the Court's Opinion was that when such facts were averred or proved, the Chancery Court had every right to grant injunctive relief without requiring complainants to exhaust administrative remedies. Third, although the word "demotion" is used in the Supreme Court's Opinion, the case did not involve a demotion, for the transfer involved the transfer of teachers from one location to another without any loss of status or pay. Basically, the case involved an attempted elimination of teachers from the system. Fourth, the case is not concerned with the transfer of administrative personnel to the position of teacher, and did not require the construction of the term "tenure" as it relates to administrative or supervisory positions. Because of these distinguishing marks, we are of the opinion that the *Yoakum* case does not control the outcome of the case at bar.

Neither is the case of State v. Rasnake, supra, controlling. The *Rasnake* case does not deal with the general Teacher Tenure Act. It involves the application of a private Teacher Tenure Act dealing with Campbell County only. The private act under consideration in the *Rasnake* case provided that none of those in authority "shall have any right to dismiss, discharge, demote or change any employee . . . from one position or class to another position or class . . . at a reduced salary,

unless and until charges as specified herein shall have first been filed and sustained. . . . " We are unable to find any provision in the general act containing even remotely similar verbiage. There were really only two questions before the Court in the *Rasnake* case, that is, whether the private act contravened the public act and, if not, whether the Campbell County School Board had the right to demote the teacher without complying with the terms of the private act. The Supreme Court acknowledged that the verbiage of the private act was different from that of the general act, but that such difference was not violative of the Tennessee Constitution because the private act merely gave to the teachers of Campbell County a reasonable protection of not being transferred to a position paying a lower salary without due notice and hearing, and did not prohibit the Board in the performance of its duty. After answering the first issue in favor of the constitutionality of the private act, the Court held that any demotion must comply with the procedure of the private act. Since the Board had not complied with the terms of the private act, the teacher was entitled to the difference in salary between that of Principal (from which position he had been demoted) and that of Classroom Teacher. Since the *Rasnake* case involved the constitutionality and the interpretation of a private act, we deem it not controlling of the instant case.

Next, we come to the case of Blair v. Mayo, supra. In that case a Principal and an Assistant Principal had been transferred from their positions to that of Classroom Teacher and Physical Education-Basketball Coach, respectively. The transfer was attempted by the Board over the objection of the County Superintendent. No charges were placed and no opportunity was afforded for a hearing. The matter was heard on oral proof, but the testimony was not preserved by means of a Bill of Exceptions. The findings of the Chancellor were part of the record and therefore were conclusively presumed to be correct. The Chancellor found that the members of the Board had acted in an arbitrary and capricious manner and enjoined the transfer. The Assignments of Error were that the Chancellor erred because it was a Mandamus proceeding and must be brought in the name of the State of Tennessee, and because Tennessee law does not require an administrative hearing in making transfers. The Court first ruled that the suit was properly brought and stated that the Assignment of Error relative to the right of an administrative hearing on a transfer "must be considered in the light of the facts of the case as the Chancellor found them." The facts as found by the Chancellor in that case clearly show that the action of the Board was illegal, arbitrary, capricious and bordered on the downright dishonest, as the Chancellor commented that "considerable evidence" appears of bribery of some members of the Board by a third party to accomplish the transfer.

We are of the opinion that the *Blair* case supra, is not controlling authority for the decision of this case. In *Blair* the transfer was attempted over the objection of the County Superintendent. By the time *Blair* reached the Supreme Court, Section 49–1411 had been amended by the legislature so that it was materially different from the form in which it existed when the Opinion in the *Yoakum* case, supra, was rendered. After the *Yoakum* decision, the legislature added the sentence "Such a transfer can be made only by the concurrent action of the superintendent and the board." We suppose such amendment was in reply to the Court ruling in *Yoakum*. That addition by amendment to the statute has been construed to mean that the transfer is ineffective unless it is made with the concurrent act of the Superintendent and the Board. Mayes v. Bailey et al. (1961) 209 Tenn. 186, 352 S.W.2d 220. Although the statutory change is not explicitly mentioned in the Court's Opinion in *Blair*, it is clearly brought out that the action of the Board was made without the concurrence of the Superintendent. It is our opinion that in *Blair* the fact of the

nonconcurrence of the Board and the Superintendent alone was violative of the teachers' rights in that case under the Teacher Tenure Act, under the authority of Mayes v. Bailey. Also, we do not construe *Blair* to mean that charges and a hearing must be afforded in every case of transfer from a higher paying position as "teacher" to a lower paying position as "teacher". As we understand the holding of *Blair*, it is to the effect that a transfer must be accomplished in a reasonable manner and for reasonable causes. Further, that since in *Blair* the Chancellor found that the transfer was arbitrary and capricious, which finding was binding on the Supreme Court, there being no other proof before it, the Decree of the Chancellor setting aside the arbitrary and capricious act of the Board was affirmed.

The case of Potts v. Gibson, Tenn., 469 S.W.2d 130, decided in June, 1971, by the Tennessee Supreme Court, has also been cited to this Court as authority to support the Chancellor's Decree. However, we are of the opinion that it is not. In *Potts,* the question of whether or not the transferee was entitled to the preference of charges, notice and a hearing was not raised. Therefore, the question was not directly ruled upon by the Court.

And now, having stated what in our opinion the Supreme Court has not said, we hold that what was said by them in the case of Mayes v. Bailey, supra, is determinative of this suit.

Our analysis of the foregoing cases is supported by the holding of the Supreme Court in the case of Mayes v. Bailey, supra. In *Mayes*, the complainant was transferred from a supervisory position by joint action of the Board and the County Supervisor to that of principal of a school at an annual reduction in salary of $500.00. Although the Opinion does not explicitly state, it is evident from the summary of events contained therein, the transfer was accomplished without the filing of charges and a hearing thereon. The facts are quite similar to those of the present case. The complainant filed his bill for injunction or Writ of Mandamus to restore him to his former position averring that his transfer was motivated by "politics". After a full hearing in the Chancery Court of the complaints, the Chancellor dismissed the bill. The proof showed that the act of the Superintendent and the Board was not arbitrary and capricious and "There wasn't any skullduggery in that Board meeting. . . ." Further, that it was the opinion of the Board and the Superintent that such transfer was for the good of the system. The Court held that in matters of the transfer of teachers, under circumstances as here described, the allegation of such circumstances presented to the Court the issue of whether or not the action of the Board was arbitrary. Further, the Court quoted with approval that part of the language of *Yoakum* dealing with the latitude and discretion of the Superintendent and the Board in assigning and transferring teachers within the school system. As we understand the *Mayes* case, no charge or hearing was granted complainant pursuant to T.C.A. 49–1414 et seq., yet the Court closed the Opinion with: "We believe that all the administrative requirements and the requirements of the law have been met in this case. . . ."

■ We think it is of important significance that in the definition of the word "tenure", found in 49–1401 T.C.A., exception is made to those who hold administrative and supervisory positions, for it provides that those holding such positions shall have tenure as teachers and not necessarily tenure in the specific type of position. In the case now before us, the complainant still has her tenure as a teacher. She has been transferred from her administrative position to that of Classroom Teacher. From the definition of "tenure" as contained in 49–1401 T.C.A., we can only conclude that complainant has tenure as a "teacher" but not tenure as an "Attendance Teacher". Her transfer in this

case had not caused her any loss in that tenure to which she is entitled.

■ We are of the opinion that the Supreme Court, by implication at the least, has heretofore held the law to be that in every case of a transfer within the system, from one position to that of another position with an accompanying lower compensation, written charges need not be made and the transferee afforded a hearing on the charges. Therefore, we hold such procedure was unnecessary in this case. Section 49–1411 does not require such procedure. Section 49–1412 provides that no teacher shall be *dismissed or suspended* without complying with the Code sections immediately following. The term "transferred" is not used in any of the sections following.

In *Blair*, supra, when ruling whether or not the "transferred" teacher was entitled to an administrative hearing, the Court cited with approval and applied the following language of Mr. Chief Justice Burnett in State v. Yoakum, supra:

"While unquestionably the school board along with the superintendent was given the right, the latitude and discretion of assigning and transferring teachers within the school system this must be done for the good of the schools. The teacher should be dealt with considerately. Ordinary fairness requires that he or she be allocated to a certain school either at the time of his selection or shortly afterwards so that they may intelligently contract or refuse to contract with the board. And when the teachers are thus transferred from one place to another it must be exercised in a reasonable manner. The best interests of the school must be intended. Where it is shown that there is an arbitrary or capricious use of power being exercised by those in authority the courts will not tolerate the use of this power. The presumption of good faith which is ordinarily accorded to officials of the kind cannot prevail and stand where it is shown

as is shown by the allegations of fact here of an arbitrary and capricious use of power in transferring these teachers."

In *Yoakum*, supra, the Court stated "No teacher under the tenure law is guaranteed continuity of employment in a particular assignment or school. The general authorities all over the country are to this effect." The Court further stated:

"The Legislature being made up of reasonable men recognized the makeup of our county school systems and that school superintendents and boards must be left with latitude and discretion in assigning and transferring teachers within the school system."

■ Therefore, it is our understanding of the holdings in the cases cited to be that in matters of transfer, teachers must be dealt with considerately and not arbitrarily or capriciously; that the transfer should be made either at the time of his selection or shortly thereafter in order that the transferee may contract or refuse to contract with the Board, and all must be done in a reasonable manner and for the good of the system.

■ Applying these procedural rules to the instant case, we find that the notice of transfer was made at a reasonable time; that is, prior to the end of the school year and before the commencement of the next, in order that the teacher could intelligently contract or refuse to contract.

■ The question remaining was whether or not the transfer was an arbitrary or capricious act of the Board and the Superintendent. The Chancellor did not find that the act of the Board and the Superintendent was either arbitrary or capricious. The Decree below is based on the Chancellor's finding that the transfer amounted to a "demotion" and under the authorities cited herein, as viewed by the Trial Court, the transferee was entitled to have charges preferred against her and a hearing afforded on those charges.

**770**

After reviewing the record in this cause, we are unable to say that the act of the Board and the Superintendent was arbitrary or capricious. It is to be presumed that the acts of a Superintendent and a Board are not arbitrary or capricious but are reasonable and fair. See Mayes v. Bailey, supra. Practically all witnesses testified to the effect that although the complainant was competent in her assignment as Attendance Teacher, her presence in the office because of her antisocial behavior, manifested by her silence as a display of her "hurt feelings" for the entire time she remained as Attendance Teacher after her loss of the election, created a strained atmosphere which interfered with the efficient operation of the office. Section 49–1411 T.C.A. authorizes a transfer within the school system "when necessary to the efficient operation of the school system". The instant case, in our opinion, falls squarely within that authorization as the proof fails to show that the act complained of, regardless of who was at fault for complainant's injured feelings, was arbitrary or capricious. It is our opinion that for us to hold that transfers within the system must be accompanied by charges and a hearing would emasculate the discretion allowed the Board and the Superintendent in the matter of transfers. The fact that such transfer was to a lower-paying teacher position from an administrative position would only have bearing on the question of abuse of discretion. Mayes v. Bailey.

We hold that Courts should not interfere with the discretionary acts of the Superintendent and the Board unless such acts are shown to be arbitrary or capricious or a subterfuge to effectively remove a teacher from the system. Neither of these conditions appear in the instant case.

It must therefore result that both Assignments of Error are sustained; the Decree below is reversed and the cause dismissed, with costs below and costs of appeal adjudged against the appellee.