Norman Blair et al.

*v.*

Gentry Mayo, et al.

450 S.W.2d 582.

(*Nashville*, December Term, 1969.)

Opinion filed February 16, 1970.

JAMES H. CUMMINGS and MARSHALL E. DUGGIN, Woodbury, for appellants.

CHARLES HAMPTON WHITE, Nashville, for appellees.

MR. JUSTICE McCANLESS delivered the opinion of the Court.

The complainants, Gentry Mayo and Robert A. Harris, Jr., brought their suit against Norman Blair, Superin-

tendent of Schools, and the members of the Board of Education of Cannon County to prohibit their dismissal as principal and as assistant principal, respectively, of Central High School at Woodbury. By their original bill, filed on June 19, 1969, the complainants averred that each had permanent tenure under Section 49-1401, T.C.A., the complainant, Mayo, having served as a classroom teacher for nine years at Central High School and as principal of that school for three years and the complainant, Harris, having served as a classroom teacher for eighteen years and as assistant principal of Central High School for two years; that they had performed their duties in conformance with the highest standards of their positions and that neither had received any criticism regarding the performance of their duties. They then averred that the defendants, the members of the County Board of Education, had met in regular session on March 13, 1969, to elect principals and teachers for the academic year, 1969-70, at which meeting the Board, over the objection of the County Superintendent, had elected the complainant, Mayo, as classroom teacher and the complainant, Harris, as physical education and basketball coach at Central High School; that the defendant, Blair, on March 27, 1969, had written the complainants of the Board's action and thereafter the complainants had written a number of letters to the superintendent by which they had demanded that they be furnished in writing the reasons for their transfers, which they described as dismissals, and that the Board give them a hearing.

The complainants, now the appellees, averred that as teachers enjoying permanent tenure status under Sections 49-1401, et seq., T.C.A., they were entitled to notice of any charges which would warrant their dismissal and

their transfers to lower positions, which were, in effect, dismissals; that they were not subject to dismissal except for incompetence, inefficiency, neglect of duty, unprofessional conduct or insubordination, and that no charges of that nature had been filed against them with the Cannon County Board of Education and that they had received no notice of any such charge; that the Board had deprived them of an effective hearing to which they were entitled.

The complainants claimed the right to invoke the inherent equitable powers of the court without having to exhaust the administrative remedies provided by the Teachers' Tenure Act, the pattern of conduct of the Board having been such as to indicate that further demand for an administrative hearing would be useless and an idle gesture and that any appeal to the Board for a reconsideration "would be an exercise in futility"; that the action of the members of the Board was arbitrary and capricious and should be enjoined. The complainants prayed that a temporary injunction issue, restraining the defendants from carrying out the transfers or dismissals of the complainants unless the superintendent should concur and unless they should be given a hearing by the Board on written charges and that upon the hearing of the cause the injunction be made permanent.

On July 8, 1969, the complainant, Mayo filed an amended and supplemental bill by which he charged that the Chancellor had signed a fiat directing the Clerk and Master to issue the temporary injunction for which the complainants had prayed and that a copy was given the County Superintendent, and defendant, Blair, who attending a meeting of the Board on the evening of June 19, 1969, at which all but two members were present, had told the members about the injunction but that the Board

thereafter had voted by a majority of seven to four to dismiss the complainant, Mayo, as a classroom teacher. The prayer was that the seven members, whom the bill named, be ordered to appear and to show cause why they should not be found guilty of and punished for contempt and that the court enter an order vacating the order of the Board.

The Board of Education in its corporate capacity became a party to the suit and filed a demurrer which the court overruled, whereupon the defendants to the contempt citation answered it and denied that when they took their action on June 19, 1969, they knew about the injunction. The defendants filed a demurrer to the original and the amended and supplemental bills which the court overruled, granting the defendants leave to rely on the grounds of the demurrer in their answer.

The Board then filed an answer admitting the facts generally but denying that its action in transferring the complainants was unlawful, arbitrary, capricious and that it stemmed from personal malice; that the action of March 13, 1969, was a dismissal or suspension; that a concurrence or approval of the County Superintendent was not necessary for the transfer of the complainants; that the complainants were without advance notice of the Board's action. The Board admitted that if the complainant, Mayo, was "a duly elected and appointed tenure teacher" on June 13, 1969, his dismissal as a teacher would have been illegal; and said that the Board had been without counsel at its meetings.

■ The Chancellor heard the case in July, 1969, and in his opinion said: "The trial of the issues in this case required three long, hard, hot days" and that a court reporter had been present and had recorded the evidence

verbatim. Since the defendants have not preserved the testimony by a bill of exceptions it will be helpful to an understanding of the facts to quote from the Chancellor's memorandum opinion which he filed and ordered made a part of the record in conformity with Section 27-113, T.C.A. His findings of fact are conclusively presumed to be correct. *Findlay v. Monroe,* 196 Tenn. 690, 270 S.W.2d 325. We quote the following from the Chancellor's opinion:

"The proposition before me is not as to the proficiency or lack thereof by either or both complainants. The evidence shows conclusively that a young male student named Reed was involved in some sort of difficulty at Central High School at some time during the tenure of complainants, and that young Reed was permanently expelled from the school. It is admitted by all that said expulsion was duly and legally approved by the Board of Education which was made up almost, if not entirely, by the same persons who constitute the present board. It appears without doubt that shortly after this expulsion was made final by the board one Eugene Reed, father of the young student, started a campaign particularly aimed at the complainant, Gentry Mayo, in an effort to interfere with Mayo's position and to cause Mayo to be dismissed and demoted. It is shown by the proof that Eugene Reed made numerous contacts with board members in furtherance of his campaign against Gentry Mayo and Robert A. Harris, Jr. I am not convinced that there was any bribery on the part of Reed although considerable evidence appears in the record in that regard.

"For the most part the ten board members gave general testimony, the substance of which was, 'I had no

personal malice or ill will. I voted to transfer them for the good of the school.' I take notice in passing that the Eugene Reed mentioned above appears from the proof to be a prominent and substantial citizen and businessman residing in or near Woodbury. From the evidence in the case I am convinced that Reed, if he had been called as a witness, would have been a witness hostile to the complainants. No reason was given as to why Reed was not called for the defendants as individuals. Under the circumstances I believe that I am required to presume that had Eugene been called as a witness he would have given testimony adverse to said defendants. It is my view of the matter that, in the light of the evidence, Mr. Reed would have been considered a witness peculiarly within the keeping of the defendants.

"A number of defendants testified that they had little or no reason for voting against complainants except for things that other board members, chiefly Cook and LeFevers, told them. A very great portion of the accusations brought forward by the defendants in their testimony were said to have taken place prior to the 1968-1969 school year and were known by the defendants when they elected the complainants for the school year 1968-1969.

"I was shocked at the frank admission of at least two of the defendants that they were school bus drivers (employed by wives and fathers who had contracted with said Cannon County Board of Education) in clear violation of the purpose and intent of the public contracts statutes of the State of Tennessee as I view the situation. Incidentally, all of said defendants voted for a $10,000.00 increase in the budget for school bus

transportation and to pay bus drivers. Although at least two such defendants made at least two trips each school day to Central High School, neither of them had ever been willing to talk to Principal Mayo and discuss complaints with him. The chief complaint of board members, Cook and LeFevers, was what they termed a lack of communication with Principal Mayo, illustrated by the fact that Mayo had an unlisted telephone number. I believe that all of the board member defendants, who had voted to transfer, testified among other things that their judgment was based on rumors of the county. Without exception, and in some respects parrot like, said defendants returned over and over again to 'I did it for the good of the school.'

"I think and hold that without doubt the defendant board members demonstrated clearly and positively their respective arbitrary and capricious attitudes toward the complainant, Gentry Mayo, and their strong resentment of the efforts of both complainants when they voted to discharge Mayo on June 19, 1969."

The Chancellor decreed that the complainants should continue to occupy their positions as principal and assistant principal of Central High School in Woodbury; that the action of the Board by which it undertook on June 19, 1969, to discharge the complainant, Gentry Mayo, as a classroom teacher was vacated; and the defendants, members of the Board of Education, be permanently enjoined from transferring, dismissing, or suspending the complainants until written charges should be filed against them pursuant to Section 49-1414, T.C.A. The Chancellor dismissed the contempt charges but decreed that costs incident to the contempt proceeding against the defendants to that proceeding individually.

Nine members of the Board and the Board in its corporate capacity have perfected their appeal to this Court as provided by Section 49-1417, T.C.A., and have assigned two errors:

1. "The Chancellor erred in overruling the defendants' demurrer on the basis that the Bill and Amended Bill are fatally defective, because this is a Mandamus proceeding, and not prosecuted in the name of the State of Tennessee on the relation of the complainants."

2. "The Chancellor erred in overruling defendants' demurrer because the Tennessee law does not require an administrative hearing by the Board of Education in making a transfer of a teacher from an administrative position to a classroom position within the same school system."

The appellants earnestly insist that the only judicial procedure available to the appellees was by a suit for mandamus. *State v. Yoakum,* 201 Tenn. 180, 297 S.W. 2d 635; *State v. Hendrixson,* 202 Tenn. 428, 304 S.W.2d 624; *State ex rel. Stewart v. Lunsford,* 207 Tenn. 33, 336 S.W.2d 20; and *State ex rel. Taylor v. Rasnake,* 209 Tenn. 229, 352 S.W.2d 427, all are suits for mandamus and mandamus is appropriate under proper circumstances for the obtaining of relief under the Teachers' Tenure Act; but the procedure provided in Section 49-1417, T.C.A., and which the appellees followed, clearly was available to the compainants in this cause. We overrule the appellants' first assignment of error.

The appellants' contention that the appellees were not entitled to an administrative hearing before they were transferred, must be considered in the light of the facts of the case as the Chancellor found them. The

appellees were summarily demoted from the positions they had held for years to lower paying positions without being given any reason for the demotions. This action was as the appellees contend, dismissal from their existing positions and violated their rights under the Teachers' Tenure Act. The appellees had the right to bring this suit without making any further effort to get an administrative hearing before the Board.

██ The language of Mr. Chief Justice Burnett in *State v. Yoakum,* supra, is particularly appropriate to the facts of this case:

"While unquestionably the school board along with the superintendent was given the right, with latitude and discretion of assigning and transferring teachers within the school system this must be done for the good of the schools. The teacher should be dealt with considerately. Ordinary fairness requires that he or she be allocated to a certain school either at the time of his selection or shortly afterwards so that they may intelligently contract or refuse to contract with the board. And when the teachers are thus transferred from one place to another it must be exercised in a reasonable manner. The best interests of the school must be intended. Where it is shown that there is an arbitrary or capricious use of power being exercised by those in authority the courts will not tolerate the use of this power. The presumption of good faith which is ordinarily accorded to officials of the kind cannot prevail and stand where it is shown as is shown by the allegations of fact here of an arbitrary and capricious use of power in transferring these teachers.

"The law will not require these teachers to exhaust an administrative remedy when to do so under the

averments of the facts herein would be a useless thing. When it is shown that it would be useless, the board who finally is to act on their appeal has already acted, then these parties may ask the assistance of the courts in the vindication of their rights.''

We therefore overrule the complainants' second assignment and affirm the decree of the Chancellor. The costs incident to this appeal are decreed against the appellant, Board of Education.