T. Edward Potts, Appellant,

*v.*

Everett L. Gibson et al., Appellees.

469 S.W.2d 130

(*Knoxville,* September Term, 1970.)

Opinion filed June 21, 1971.

324

CHARLES HAMPTON WHITE, THOMAS I. CARLTON, JR. CORNELIUS, COLLINS, HIGGINS & WHITE, Nashville, for appellant.

SWAFFORD & LOONEY, Crossville, for appellees.

MR. SPECIAL JUSTICE LUKE M. McAMIS delivered the opinion of the Court.

T. Edward Potts, a teacher with tenure, filed the bill in this case challenging the action of the Board of Education of Cumberland County, transferring him from the position of Principal of Cumberland County High School to the position of Principal of Pleasant Hill Elementary School.

The bill charges that the transfer resulted in a reduction in salary, some inconvenience in traveling to Pleasant Hill Elementary School and a reduction in status and responsibilities and, under the authorities, was in effect a dismissal entitling complainant to notice of a hearing before the Board. Complainant charges that this right, among others, was denied him by the Board. The Board tacitly concedes that its proposed action was of such nature as to entitle complainant to an administrative hearing, after notice, but insists that ample notice was given.

After a full hearing the Chancellor dismissed the bill based upon a finding that the evidence sustained the Board's finding of neglect of duty and incompetence; that the action taken by the Board was not arbitrary, capricious or unlawful as charged in the bill but was solely for the welfare of the High School and its proper and efficient operation. Complainant has appealed. No question is raised by the assignments that the Chancellor erred in hearing evidence not heard by the Board.

The assignments are in general directed to the sufficiency of the notice, the lack of substantive evidence of neglect of duty and incompetence and the fairness of the hearing before the Board, at which some of the members of the Board testified as witnesses. It is also insisted that in some respects the evidence went beyond the purview of the purported written notice of the charges preferred against complainant.

■ The filing of the bill entitled complainant to a review de novo of the Board's action. T.C.A. sec. 49-1417.

■ The review in this Court is de novo, accompanied by a presumption of the correctness of the decree unless

the evidence preponderates against the findings on which the decree is based. T.C.A. sec. 27-304; *Kernodle v. Peerless Life Ins. Co.*, 213 Tenn. 631, 378 S.W.2d 744; *Robert Arthur Management Corp. v. State ex rel. Canale*, 220 Tenn. 101, 414 S.W.2d 638.

Complainant Potts had been the Principal of Cumberland County High School for a number of years prior to March, 1970. At a meeting of the Board on March 17, 1970, all Board members opposed renewing his contract for the school year 1970-1971. Mr. Strachn, a member of the Board and a personal friend of complainant, was delegated the duty of interviewing complainant to see if he wished voluntarily to relinquish his position. Mr. Strachn's report to the Board indicated that complainant wanted to resign if the Board considered his services unsatisfactory but that he wished to give the matter some thought before giving the Board a final answer. Later, complainant, by letter, requested an administrative hearing.

Against this background, Mr. Gibson, the Superintendent of Education of Cumberland County, at the instance of the Board, on April 17, 1970, outlined in letter form the charges which the letter stated would be heard by the Board on April 28, 1970. We quote the material portion of the letter:

"1. *Public relations*

a. Widespread demand of public for change in high school administration.

b. Poor public relations with Jaycee organization in two Bowl games.

c. Failure to work effectively with bus drivers and with personnel of State Department of Transportation in solving bus problems.

"2. *Poor management of high school funds*

a. Deficit in athletic department making financial hardship on athletic teams.

b. Failures in following financial procedures in purchasing band and athletic supplies.

c. Failure to pay basketball coaching supplements.

"3. *'Permissive' attitudes resulting in discipline and maintenance problems*

a. Degrading of offices of principal and assistant principal in shower incident last year.

b. Lack of administrative supervision in care of the building, resulting in excessive damages to school property beyond the normal wear and tear of facilities.

c. Allowing obsenity and vulgarity to remain in some parts of the building, creating atmosphere of disrespect.

"This is to notify you officially that I have recommended to the Board of Education that you be transferred to the position of principal of Pleasant Hill School for the school year 1970-1971 in case the Board holds to its decision to replace you as high school principal. I sincerely hope that you will accept this position if the Board retains its earlier decision. I assure you that I will work with you in every way possible to make your school year a success. The decision to accept or reject this position, of course, remains in

your hands. The matter of public or private hearing is also your decision.''

After the hearing on April 28, 1970, Mr. Bristow, Chairman of the Board, wrote complainant referring to an apparent misunderstanding on the part of complainant and his counsel regarding ''the grounds'' of the proposed transfer and stating that, although not specifically mentioned, the Board considered that the charges outlined in the letter of April 17, 1970, would, if substantiated, ''form the basis'' for a finding of ''incompetence and neglect of duty'' which would constitute a ''legal basis'' for the transfer.

Thereafter, with this definition of terms a continuation of the hearing was held on May 21, 1970, following which the Board ordered the transfer of complainant to Pleasant Hill Elementary School.

We deal first with the sufficiency of the notice.

■ Our cases recognize and to some degree emphasize the right of a teacher having tenure to notice of a hearing before the Board before he can be transferred to a position with less responsibilities and where he will be required to serve at a reduced salary. *State v. Yoakum*, 201 Tenn. 180, 297 S.W.2d 635; *State ex rel Taylor v. Rasnake*, 209 Tenn. 229, 352 S.W.2d 427; *Blain et al. v. Mayo et al.*, 224 Tenn. 108, 450 S.W.2d 582.

The statute, T.C.A. secs. 49-1414, 49-1415, merely provides that charges against a teacher having tenure rights shall be made in writing ''specifically stating the offenses which are charged.''. It is to be seen no guide lines are laid down by the statute as to the degree of specificity required. There appears to be a dearth of authority as to the requirements of the statute in this respect.

The brief for complainant cites *Hayden v. City Council of Memphis,* 100 Tenn. 582, 47 S.W. 182, and *McKee et al. v. Board of Elections,* 173 Tenn. 276, 116 S.W.2d 1033, 117 S.W.2d 755. The first of these cases was a proceeding to remove a member of the council of the City of Memphis; the second involved a judicial review by certiorari of the action of the State Board of Elections.

In *McKee,* the Court speaking through Mr. Justice Chambliss, later Chief Justice, reiterated the principle of *Hayden v. Memphis* that the charges must be "specifically stated with substantial certainty; yet the technical nicety required in indictments is not necessary".

■ The procedure prescribed by the statute is designed to insure the teacher a full hearing before the Board upon every issue under consideration by that body. To accomplish this the first essential is a notice sufficient in substance and form to fairly apprise the teacher of the charge against him and enable him to prepare his defense in advance of the hearing.

"Where the contents of the notice are ambiguous and obscure, so that the teacher is not clearly informed of the nature of the charge, the notice is generally held insufficient." *City of Knoxville Board of Education v. Markelonis* (1970), 62 Tenn. App.—, 460 S.W.2d 362.

■ To comport with notions of fair play and due process and to constitute notice in the legal sense the means employed should equal or exceed that which one desirous of actually informing the opposite party would employ. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865, cited in *Burden v. Burden,* 44 Tenn.App. 312, 313, S.W.2d 566.

■ Except in the clearest case of a material disregard by the Board of the procedural requirements of the statute or a showing of prejudice, where a trial de novo has been had in which the teacher appeared and fully participated the appellate court should not interfere with the action of the Board on procedural grounds. Compare *Mayes v. Bailey*, 209 Tenn. 186, 352 S.W.2d 220.

■ In this case the letter of March 17, 1970, set forth with considerable particularity the nature of the complaints. This was followed by the first sitting of the Board on April 28, 1970, more than a month later, with no final action until May 21, 1970, almost a month later. In the meantime, as above shown, the charges were clarified by the letter stating that the Board considered the charges to be tantamount to a charge of incompetence and neglect of duty. When so considered and in view of the subsequent trial de novo at which complainant was accorded a full hearing the complaint of insufficiency of the notice was reduced to a bare technicality devoid of substance.

■ We also find no merit for much the same reasons in complainant's related contention that the proof went beyond the purview of the notice. Under the explanation in writing that the specific charges leveled by the letter of March 17, 1970, were components of the charge of incompetence and neglect of duty this argument in our view becomes untenable.

On the merits, the Chancellor found that complainant was given a fair and impartial hearing before the Board; that the Board's action was not arbitrary or unreasonable but, on the contrary, that the evidence was "heavily in favor" of the Board's findings of neglect of duty and

incompetence in the exercise of the executive authority. We quote from the Chancellor's written findings of fact:

"The evidence is heavily in favor of the proposition that the complainant did not exercise with competence the executive authority vested in him as principal of Cumberland County High School. The proof was strongly in favor of the propositions that the panic hardware on many of the doors of the building was broken and inoperative the greater part of the time; one or more doors designed to be used for ready exit in case of fire remained chained and locked; waste receptacles were almost constantly running over with highly inflamable waste paper; many signs of consumption of alcoholic beverages were in evidence in the building and on the campus; much highly improper bodily contact between male and female students was permitted to go unchallenged on the part of the complainant; the building itself, which is relatively a new structure, has been allowed to deteriorate to an extreme degree; and vulgarities were condoned in writing about the building, such as allowing the letter 'y' to be obliterated over the entrance to the Study Hall so that the words read 'Stud Hall'."

■ The conditions described by the Chancellor were so long continued, so flagrant and so open and obvious that to say that complainant was unaware of them would at the same time necessitate a finding of gross negligence or indifference to the good order of the school over which he was expected to exercise executive authority as well as the safety and moral atmosphere of the scholastic community.

We cannot say the evidence preponderates against the findings and conclusions of the Chancellor.

We cannot agree that the effect of these findings is mitigated by complainant's reliance upon teachers under his authority to perform disciplinary duties or upon the maintenance superintendent to keep the building safe and in good repair. Although perhaps not solely responsible, as we view it, complainant was the "Captain of the Ship" to whom was confided the overall operation and supervision of the school, its personnel and the physical facilities, all of which were immediately under his authority and control.

But, it is said, the entire proceeding should be vacated because members of the Board, prior to the hearing, had determined the issues against complainant and because five of the nine member Board testified as witnesses in favor of the transfer and then sat in judgment upon their own testimony.

The argument unquestionably has force and appeal. The practice does not commend itself as best suited to the ascertainment of truth and justice. It can be sanctioned, if at all, on the ground of necessity growing out of the existing system of administrative control over school systems.

It is inevitable that members of a school board should form an opinion, good or bad, of teachers and especially school principals within the system. And by reason of their official duties the members may possess valuable information either for or against individual members of the teaching and executive staff and consequently can offer valuable testimony at a disciplinary hearing before the board. Yet, the law makes no provision for a hearing before another tribunal. Much of the mischief which could result from the system is obviated by the right to a trial de novo conferred by T.C.A. sec. 49-1417.

We reach the conclusion that as a matter of necessity the findings and conclusions of the Board cannot be upset on the grounds asserted, absent a showing of bias and prejudice. Happily, in this case as the Chancellor found the record shows without question that members of the Board were actuated solely by a desire to promote the best interest of the schools and, at the same time, avoid any unnecessary embarrassment or injury to complainant, by placing him in a school attended by younger children and a smaller number of children where the Board apparently felt he could better serve the school system of the County.

The difficulty in all cases of this nature is to strike a proper balance between that degree of flexibility necessary for the Board of Education to maintain its administrative authority over schools and school personnel and the duty of the Courts to intervene to protect the tenure rights of teachers. In this case we think the Board acted within the sphere of administrative authority into which under the facts of this case the Court should not intrude.

Affirmed.

DYER, CHIEF JUSTICE, CRESON and McCANLESS, JUSTICES and JENKINS, SPECIAL JUSTICE, concur.