John DAVIS

v:

James BARR et al.

Civ. A. No. 8232.

United States District Court,
E. D. Tennessee, N. D.

Nov. 12, 1973.

William Lamar Newport, Gullett, Steele, Sanford, Robinson & Merritt, Nashville, Tenn., for plaintiff.

Chester S. Rainwater, Jr., Rainwater & Rainwater, Dandridge, Tenn., Richard L. Hollow, McCampbell, Young, Bartlett & Woolf, Knoxville, Tenn., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

Plaintiff, a former coach and now a teacher in the Jefferson County, Tennessee school system, has filed this action pursuant to Title 42 U.S.C. § 1983 for damages and other equitable relief on the ground that he was demoted by the Jefferson County Board of Education from his coaching position without being afforded procedural safeguards under the Fourteenth Amendment.

The uncontroverted proof shows that plaintiff was hired in 1965 to fill a vacancy at Jefferson County High School as a coach and teacher. From that time until April 7, 1972, he remained on the staff in this dual capacity and it has been stipulated that plaintiff enjoyed tenured status as a teacher as is defined in T.C.A. § 49–1401 et seq. (hereinafter referred to as the Tenure Act).

Testimony further indicates, and the Court finds as a fact, that the position plaintiff filled is open only to one who is both a teacher and a football coach. That is to say that plaintiff was hired not only because he was qualified to teach in several areas,[1] but primarily because he would assume the position of head football coach.

As compensation, plaintiff received the annual state scheduled teachers' allotment, plus a supplement in the amount of $1,000.00 as provided by the county school board for performing his coaching duties. The proof clearly indicates that this supplement is not part of the scheduled teachers' salary as is provided by the State of Tennessee. Rather, each school system sets, whether by individual negotiation or otherwise, the supplement that is to be provided a coach.

On April 6, 1972, the Jefferson County School Board met and decided, for reasons not elucidated at trial, to remove plaintiff from his coaching position. The then superintendent, Mr. Y. J. McAndrew, testified that at no time prior or subsequent to the meeting was he in favor of this action and for that reason he did not concur in the vote for such removal. The minutes of the April 6th meeting corroborate this testimony. (See also minutes of April 13). On the following day, McAndrew was requested to notify plaintiff of the Board's action and this was so done by letter. Thereafter, plaintiff contacted McAndrew for the purpose of ascertaining the reasons for the Board's action and to be allowed to hear the charges against him and present evidence in his behalf. This request was made pursuant to advice of the Tennessee Teachers' Association (TEA) whom plaintiff had contacted subsequent to the notice of removal.

A meeting was then scheduled and held on July 13, 1972, but the undisputed proof shows that no charges were formally presented plaintiff and no hearing was held. Rather, the Board adjourned the meeting without further discussion.

On July 24, another meeting of the Board convened at which time plaintiff and his then counsel again requested presentation of charges, but none were forthcoming and the meeting was adjourned.

The Board again met on July 29, 1972 for the purpose of postponing football practice until the coaching situation could be resolved. Mr. Y. J. McAndrew informed the Board that certain members of the community wished to speak on plaintiff's behalf. The Board then scheduled a meeting open to the public for August 10, 1972.

1. Plaintiff testified that he was certified to teach inter alia History, Social Studies, Health and Physical Education.

At this meeting, plaintiff again requested that charges be presented. It appearing that the meeting was resulting in a public squabble, the Board recessed into executive session, whereupon it ratified its action of April 6 and appointed Mr. Collins as interim coach.

Plaintiff once more attempted to ascertain reasons for his removal at a Board meeting held on August 31, 1972, but no such charges were forthcoming nor was a hearing held.

Plaintiff, as advised by TEA, reported "as normal" for duty when the fall school term commenced. However, his testimony indicates that his presence was received with "coolness and surprise." The class schedule and assignment sheet reflects that he was not originally assigned to the schedule, and that another teacher had been assigned to teach plaintiff's classes. Plaintiff testified that he was ignored for two days. However, on the third day, plaintiff was assigned to the teaching schedule and assumed such duties.

In October, 1972, plaintiff was notified that he was suspended pending an investigation of certain charges asserted against him relating to his performance as a teacher. This suspension was with full teacher compensation. In December, 1972, a three-day hearing was conducted by the Board, at which time plaintiff was returned to his teaching duties. However, in the opinion of the Board, a transfer to White Pine High School was required in order to promote the efficient operation of the school system.

Nevertheless, plaintiff contends that this subsequent hearing, while comporting in form to the requirements of due process, was not in substance sufficient to rectify his prior removal from his coaching position without a hearing. He alleges that since the Board had already pre-judged the merits of the transfer by their prior action of removal, he was further damaged in that he was re-

quired to travel some 48 extra miles to his new school. Plaintiff supports this contention by arguing that since the position he occupied at Jefferson County High School could be filled only by one who was both a teacher and a coach, the subsequent transfer was incident to his initial removal.

Additionally, plaintiff's unrebutted testimony shows that because of the controversy surrounding his removal, he was forced to send his son to school in an adjoining county at an additional expense of some $287.00.

The sole issue for the Court to determine is whether plaintiff was, at the time he was removed from his coaching duties, entitled to notice and a pre-removal hearing comporting with the Due Process Clause of the Federal Constitution. If so, then the Court must further determine the relief plaintiff is to be granted. If he was not, plaintiff's action should be dismissed.

■ Before the procedural safeguards of the Due Process Clause may be invoked, plaintiff must demonstrate that the alleged actions of defendants deprived him of an interest encompassed by the Fourteenth Amendment's protection of property. (Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L. Ed.2d 548 (1972); Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L. Ed.2d 570 (1972)).[2] Therefore, as a threshold determination, the Court must decide whether plaintiff enjoyed an interest in property in light of the controlling decisions herein cited. We hold that he did.

In *Roth* and *Sindermann,* supra, the Court clearly rejected the distinction between "rights" and "privileges" that had theretofore governed the applicability of the due process safeguards and stated:

"The Fourteenth Amendment's procedural protections of property is a safeguard of the security of interests that a person has already acquired in

---

2. There is no contention in the present case that plaintiff's interests in liberty were im-

pinged by the actions of the members of the Board.

some specific benefits. These interests—property interests—may take many forms."

(*Roth,* supra, at p. 576, 92 S.Ct. at p. 2708)

In the present case, as in *Roth* and *Sindermann,* plaintiff contends that the property interest to be protected is his interest in continued employment as a teacher and coach. However, in order to meet the standard as established by those cases, he must demonstrate more than an abstract need or subjective desire for the position he held. He must show that he had a "legitimate claim of entitlement to it." (*Roth* supra, at p. 577, 92 S.Ct., at p. 2709). To ascertain whether plaintiff's interest in continued employment as a teacher/coach was a legitimate claim of entitlement, *Roth,* supra, clearly indicates that we may look to

" . . . existing rules of understandings that stem from an independent source such as state law— rules of understandings that secure certain benefits and that support claims of entitlement to those benefits."

(408 U.S., at p. 577, 92 S.Ct. at p. 2709)

■ It has been stipulated that plaintiff was tenured as a teacher under T.C.A. § 49–1401 et seq. and would clearly be entitled to notice and hearing as a matter of state law, irrespective of the Constitutional issue, if terminated or removed as a teacher. Defendants argue, however, that the protections afforded by the Tenure Act apply only to his position as a teacher and do not proscribe the hiring and firing of plaintiff as a coach. Plaintiff, on the other hand, argues that the vacancy he was hired to fill was that of teacher and coach and therefore the two positions were in reality inseparable. Plaintiff further contends that under the Tenure Act, and the interpretations given it by the Supreme Court of Tennessee, he had a substantive right, as a matter of state law, to a pre-demotion hearing. Defendants

construe the state law to the contrary. Accordingly, we must ascertain the status of plaintiff under the applicable state law not for the purpose of deciding whether state law was violated as defendants would suggest, but to determine the limited issue of whether plaintiff enjoyed the legitimate claim of entitlement to continued employment without perfunctory discharge or demotion.

T.C.A. § 49–1401 provides in pertinent part that:

\* \* \* \* \* \*

"(1) The word 'teacher' includes teachers, supervisors, principals, superintendents and all other certificated personnel employed by any county, city or special district board of education, . . .

\* \* \* \* \* \*

"(4) The word 'tenure' indicates the statutory requirements, conditions, relations, . . . under which a teacher . . . holds a position as a teacher under the jurisdiction of the board. Administrative and supervisory personnel shall have tenure as teachers and not necessarily tenure in the specific type of position in which they may be employed."

T.C.A. § 49–1411, as amended, provides in pertinent part:

"The superintendent, with the approval of the board, when necessary to the efficient operation of the school system, may transfer a 'teacher' from one location to another within the school system, or from one type of work to another for which he is qualified and certificated. Such a transfer can be made only by the concurrent action of the superintendent and the board."

T.C.A. § 49–1412 through § 49–1417 provide the procedure to be employed upon discharging a tenured teacher and the avenues of judicial review available in the state courts.

In Blair v. Mayo, 224 Tenn. 108, 450 S.W.2d 582 (1970), the Tennessee Supreme Court was faced with a summary dismissal of a principal and his assistant

arising out of a locally controversial suspension of a student from school. Both personnel had been tenured as teachers under the Act and both were retained by the board of education as teachers. The court, in affirming the chancellor's decree, enjoined the board's actions as being arbitrary and capricious under the Act.

Potts v. Gibson, 225 Tenn. 321, 469 S. W.2d 130 (1971), again dealt with a summary administrative demotion and transfer of a tenured principal. The court stated that:

"Our cases recognize and to some degree emphasize the right of a teacher having tenure to notice of a hearing before the Board before he can be transferred to a position with less responsibility and where he will be required to serve at a reduced salary. State v. Yoakum, 201 Tenn. 180, 297 S.W.2d 635; State ex rel. Taylor v. Rasnake, 209 Tenn. 229, 352 S.W.2d 427; Blair et al. v. Mayo, et al., 224 Tenn. 108, 450 S.W.2d 582."

However, since plaintiff had been afforded a de novo hearing in Chancery Court where all of the proof was subject to retrial, the court found that the spirit of the statute had been substantially satisfied, and, therefore, upheld the decision of the chancellor and the board.

Under the *Potts* decision, it was clear that before a teacher could be transferred to a position of less responsibility, a pre-transfer hearing or its equivalent was required as a matter of right. Nevertheless, in June and July, 1972, the supreme court decided the cases of State ex rel. Pemberton v. Wilson, 481 S.W.2d 760 (Tenn.1972 per curiam), and Gibson v. Butler, 484 S.W.2d 356 (Tenn.1972, McCanless, J. for the majority), which counsel submit represent authority for each of their respective positions.

*Pemberton*, supra, involved the following facts: In 1968, plaintiff who was a tenured teacher and was employed as an attendance teacher in Morgan County, Tennessee, ran for the elected post of superintendent against the defendant. Not only did plaintiff lose the election, but apparently a rift developed between the parties during the campaign. After the election, the board, with concurrence of its newly elected superintendent, approved the transfer of plaintiff from her prior position as an attendance teacher to that of classroom teacher. In her new position, plaintiff earned some $800.00 less per year but worked 20 fewer days and had approximately twenty-six miles less to travel per day. Plaintiff claimed that this was a demotion under the Act and the *Potts* and *Blair* decisions. The court stated that no teacher is guaranteed continuity of employment in a particular job and that under the facts presented, its scope of review was limited to whether the actions taken were arbitrary and capricious. It distinguished *Potts*, supra, on the ground that the court there was not required to reach the procedural issue. However, the critical distinction was made between the case and the *Blair* decision, in that *Blair* involved a situation where the transfer was made without concurrence of the superintendent under T.C.A. § 49–1411, thereby rendering the transfer prima facie arbitrary. (See State ex rel. v. Yoakum, 201 Tenn. 180, 297 S.W.2d 635 (1956)).

On July 3, 1972, the Supreme Court of Tennessee rendered the decision in Gibson v. Butler, 484 S.W.2d 356 (Tenn. 1972: see also Chancery Court opinion attached to plaintiff's brief), which concerned the following facts: Sixteen teachers had been transferred to positions of less responsibility and remuneration due to an apparent rift between the board of education and the superintendent. The transfers were made without notice of hearing and without the concurrence of the superintendent.[3] In affirming the trial judge's reinstate-

---

3. From a reading of the cases and from testimony heard at trial it appears to be the general procedure, with some local variations, for both the superintendent and the board to submit individual lists of teachers that are subject to reelection. A vote is then taken, and those approved are appointed for an additional term.

ment of those who were tenured plaintiffs, the court reaffirmed its position taken in *Yoakum*, supra, and held that each was entitled to notice and written charges of "dismissal or demotion" and an opportunity to be heard under the Act. (484 S.W.2d at p. 358). Additionally, upon petition to rehear in light of *Pemberton*, the court held that under the circumstances, that is, where plaintiffs were transferred to lesser positions of responsibility thereby causing a reduction in compensation, the *Pemberton* rule was inapplicable.

■ The case presently under consideration appears to be indistinguishable from the Court's most recent pronouncement in Gibson v. Butler, supra. Here, plaintiff was a tenured teacher and had held the position of teacher and coach since approximately 1966. The evidence further shows that he was hired specifically to fill this dual position and had been persuaded at least on one occasion to remain in it. The members of the board at its April 6th meeting, without concurrence of the then superintendent, Y. J. McAndrew, discharged plaintiff from his duties as coach thereby reducing his compensation for the next term of $1,000.00. No notice of the charges were presented at that time nor was he afforded a hearing until the events occurring in the fall of 1972 which lead to a formal suspension, hearing, and eventual transfer to White Pine School in January.

Under the applicable Tennessee law, plaintiff had a legitimate claim of entitlement to continued employment as a teacher and coach without summary discharge from his coaching duties. We emphasize, however, that in relying upon the law of Tennessee to find that plaintiff enjoyed an interest in property we do not hold that defendants violated state law. That issue is not before us and is a matter to be determined in the appropriate state forum. Thus, we conclude that defendants violated plaintiff's rights to procedural due process by summarily demoting him without a pre-removal hearing. Board of Regents v. Roth, supra; Perry v. Sindermann, supra; Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Slochower v. Board of Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1955); Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952)).

As damages, plaintiff has asked the Court to reinstate him as coach at Jefferson County High School; to award him back salary in the amount of $2,000.00 which represents the additional county supplement for the two year period between the time of termination and suit; to award the sum of $15,000.00 as compensatory damages. Plaintiff further seeks attorney's fees and punitive damages. In support of his claim for $2,000.00 in back salary and damages sustained in his eventual transfer, plaintiffs contends that his summary demotion was not cured by the subsequent three-day hearing held in December, 1972. Specifically, plaintiff alleges that while outwardly conforming to procedural techniques that would conform to the due process standards, the members of the board had already formulated an opinion thereby preventing plaintiff from receiving an impartial determination.

■ The evidence does not support this contention. The deposition of Mr. Aubrey M. Witherington, TEA representative, reflects that the December hearing fully comported, as far as was practicable under the circumstances, with due process procedures. While a disinterested third party arbitrator, or separate hearing panel may have been more ideal, due process does not require a hearing to be conducted by those unconnected with the controversy where under the circumstances those who actually conducted the hearing were the only persons available for making the decision. (See, Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). The only damage plaintiff sustained as a result of the summary demotion in April, 1972 was the loss of that portion of the $1,000.00 coaching

supplement computed from April, 1972 until January, 1973, at which time he was properly transferred.[4] That amount comes to $750.00. The Court further finds that as a result of the controversy surrounding the April demotion, plaintiff was required to send his son to an adjoining school district. Plaintiff is entitled to recover this expense in the amount of $287.00. Plaintiff is not entitled to recover attorney's fees or punitive damages. (Lusk v. Estes, 361 F. Supp. 653 (N.D.Tex.1973)).

In their post-trial briefs, defendants contend that this action should be dismissed on the following grounds: (1) plaintiff failed to exhaust his state remedies; (2) a mere violation of rights which stem solely from a relation of a citizen to his state is not protected by the Federal Constitution; (3) plaintiff fails to state a claim under Title 42 U. S.C. § 1983 in that the defendants acted as a corporate body and not as individuals. Defendants further assert that the Jefferson County Board of Education, as such, should be dismissed as not being a person within the meaning of the Civil Rights Act.

■ As to defendants' contention that the Board, as such, is not a person within § 1983, we agree. (Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L. Ed.2d 492 (1961); Guelich v. Mounds View Independent Public School Dist. No. 621, 344 F.Supp. 1276 (D.Minn. 1972); Jones v. Jefferson County Board of Education et al, 359 F.Supp. 1081 (E.D.Tenn., 1972); Alexander v. Kammer, 363 F.Supp. 324 (E.D.Mich.1973)).

Nevertheless, the Court is of the opinion that both plaintiff's allegations and the proof adduced at trial support his claim against the individual members of the Board who were acting under color of state law. (Board of Regents v. Roth, supra; Perry v. Sindermann, supra; Orr v. Thorpe, 427 F.2d 1129 (5th Cir. 1970); Bennett v. Gravelle, 323 F. Supp. 203 (D.Md.1971)).

■ Additionally, Title 42 U.S.C. § 1983 does not, under the circumstances here presented, require plaintiff to exhaust his state administrative and judicial remedies before proceeding in this Court. (Beale v. Blount, 461 F.2d 1133 (5th Cir. 1972); Jones v. Metzger, 456 F.2d 854 (6th Cir. 1972); Webb v. Lake Mills Community School Dist., 344 F. Supp. 791 (N.D.Iowa 1972)).

■ Defendants' reliance upon Gentry v. Howard, 288 F.Supp. 495 (E.D. Tenn.1968) and other cases analagous thereto is also misplaced. The violation complained of in the present case rests solely upon the Federal Constitution. As previously indicated, we do not here decide whether the laws of Tennessee have been violated. Our inquiry into such laws is limited solely to the extent of determining whether plaintiff enjoyed an interest in property protected by the procedural safeguards of the Due Process Clause. Defendants' contention is, therefore, without merit.

In summary, we hold that plaintiff's right to continued employment as a teacher and coach without summary demotion to a position of less responsibility and reduction in salary was violated by defendants when they removed him from the position as coach of Jefferson County High School without a pre-removal hearing.

It is accordingly ordered that plaintiff be, and same hereby is, entitled to recover from the defendants, except the Jefferson County Board of School Commissioners, in the aggregate amount of $1,037.00, and statutory costs.

4. Defendants admit in their post-trial brief that if the Court finds that plaintiff's due process rights were violated in April, 1972, the measure of damages could be computed from then until his eventual transfer in January, 1973.