**William Sullivan COE**

v.

**Paul M. BOGART, Superintendent of Schools of Sevier County, Tennessee, et al.**

**Civ. A. No. 8436.**

United States District Court,
E. D. Tennessee, N. D.

April 3, 1974.

Charles Hampton White, Cornelius, Collins, Higgins & White, Nashville, Tenn., for plaintiff.

Michael Y. Rowland, Knoxville, Tenn., William R. Holt, Jr., Sevierville, Tenn., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This action is brought under 42 U.S.C. § 1983; 28 U.S.C. § 1343, alleging deprivation of procedural due process under the Fourteenth Amendment of the United States Constitution.

Plaintiff, William Sullivan Coe, formerly served as the principal at Sevier County High School. Having been employed in the County school system for

thirty-six years prior to the occasion under examination, plaintiff was tenured under Section 49-1401 et seq. of the Tennessee Code Annotated and could not be dismissed or demoted without a prior hearing. During the 1972-73 school year, plaintiff received as his salary $9,950.00 for a ten month year.

On March 5, 1973, Mrs. Kathleen Hickey, Chairman of the Sevier County Board of Education, (hereafter, the Board), and Mr. Paul Bogart, Superintendent of Schools, met with plaintiff at his school and informed him that the School Board was considering reassigning him to another position within the school system. This proposed relocation by the Board was in response to the Board's belief that the school could function more effectively under different leadership. Plaintiff was informed by Hickey and Bogart at that time of the potential availability of the position of Director of Vocational Education to be created in the future if the Sevier County Quarterly Court were to appropriate the necessary funds. The salary for this proposed position was to be approximately $10,000.00. It is significant to note that plaintiff on March 5 acted affirmatively toward the job offering of Director of Vocational Education and its potential creation, and expressed an interest in being reassigned to the position should it become available. Plaintiff during the March 5 meeting did not request a formal written statement of allegation by the Board nor did he request a hearing on the issue of transfer.

On April 2, 1973, the Board, upon the recommendation of Bogart, voted to "transfer or reassign Mr. W. S. Coe from the principalship at Sevier County High School to another position in the Sevier County School System." Concurrent with this action, the Board recommended that several new positions be established for the forthcoming 1973-74 year, including the position of County Vocational Director. Plaintiff learned of the Board's action on or about April 5 through a local newspaper. Again, upon learning of the transfer, plaintiff requested neither a statement nor a hearing.

At this point, a dispute arises as to the occurrence of a meeting shortly after April 2, 1973. Plaintiff says that at this time he met with Hickey and Bogart a second time, while the latter submit this meeting never took place. Assuming a second meeting did take place, plaintiff failed to request either a statement of charges or a hearing before the Board.

In response to the March 5 meeting and the Board's action in April, plaintiff contacted the Knox County Director of Vocational Education in March or April 1973 in order to investigate employment opportunities in that system. He subsequently signed on July 27 a one-year employment contract with Knox County, effective from July 1, at a salary of $12,376.00 for a twelve month year. (In his former position, plaintiff was earning $9,950.00 for a ten month year.) In this vein, there appears to be a conflict between plaintiff's requested relief—that the Court place him back in his former position at Sevier High School —and his present contractual obligation to serve as a school teacher in Knox County until June 30, 1974. At no time did plaintiff notify defendants of his projected employment with the Knox County Schools.

The school year ended on June 5, 1973 without defendant's offering plaintiff either a contract of employment for the 1973-74 school year or a definite school in which to relocate. The Quarterly Court of Sevier County met on July 16, 1973 but did not appropriate in the school budget sufficient funds to create the proposed position of Vocational Education Director. The Board thereafter, having received word of plaintiff's employment with Knox County, treated plaintiff's action as a resignation from the Sevier County School System. From the time of the March 5 meeting to the filing of this complaint plaintiff failed

to request either a hearing or a formal statement of charges.

The right of plaintiff to a due process hearing before a transfer is governed in this instance by Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Thus, where a person's future expectancy of employment, defined in particular by state laws, takes the form of a property right, that right cannot be summarily denied in the absence of an effective due process hearing. The Court in *Perry* and *Roth* submitted that property interests of this nature "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . . ." 408 U.S. at 577, 92 S.Ct. at 2709. Thus, while this Court has previously ruled in this case that it will not exercise pendent jurisdiction over plaintiff's claim for relief arising under the Tennessee Tenure Act, 49 Tenn.Code Ann. § 1401 et seq., an understanding of plaintiff's property interest and its accompanying rights require the Court to look to Tennessee Tenure law. This examination of state law, however, should be qualified by the remark that it is not the Court's desire to reflect on plaintiff's state claim. See, e.g., Davis v. Barr, 373 F.Supp. 740 (E.D.Tenn.1973). Rather, it is from this analysis that plaintiff's property rights flow.

Plaintiff is a tenured teacher with the Sevier County system and thus under 49 Tenn.Code Ann. § 1401 et seq. would be entitled to a hearing and charges before dismissal. The question logically arises whether plaintiff's proposed transfer under the particular circumstances here amounted to a dismissal, and[1] accordingly a deprivation under *Roth* and *Perry*. This question is not without significant examination in the Tennessee courts. See generally State ex rel. v. Yoakum, 201 Tenn. 180, 297 S.W.2d 635 (1956); Blair v. Mayo, 224 Tenn. 108, 450 S.W.2d 582 (1970); Potts v. Gibson, 225 Tenn. 321, 469 S.W.2d 130(1971); State ex rel. Pemberton v. Wilson, 481 S.W.2d 760 (Tenn.1972 per curiam); Gibson v. Butler, 484 S.W.2d 356 (Tenn. 1972).

Although the Court has previously synthesized the above Tennessee holdings. in *Davis*, supra, since plaintiff's rights are derived from their spirit, an examination of their factual basis is useful.

In *Blair,* a situation factually similar to the case at bar, the Tennessee Supreme Court held that a tenured high school principal could not be summarily transferred by the Board of Education to a classroom teacher in the absence of the concurrence of the County Superintendent as required by statute and without hearing and charges. Several distinctions would, however, appear controlling. In that instance, there was credible evidence that the Board's action in transferring the principal was punitive in nature. There is not significant indication in the case before the Court that the Board's transfer was prompted by a similar motive. Also, in *Blair,* the Board's transfer was not concurred in by the Superintendent, as is the case here. For these reasons, plaintiff's reliance on *Blair* is misplaced.

Again, in Potts v. Gibson, 225 Tenn. 321, 469 S.W.2d 130 (1971), the Supreme Court recognized the right of a teacher to a hearing before his trans-

---

1. Defendant cited to the Court 49 Tenn.Code Ann. § 1411 (Supp.1972), which provides:

"The superintendent, with the approval of the board, when necessary to the efficient operation of the school system, may transfer a 'teacher' from one location to another within the school system, or from one type of work to another for which he is qualified and certificated. Such a transfer can be made only by the concurrent action of the superintendent and the board."

While this section is significant since it defines the relationship between the state and the teacher, it is not controlling. This Court must look behind the face of the statute to determine whether the Board's action in this instance amounted to a transfer or in fact constituted a demotion, thus, constituting a deprivation of property.

fer by the Board to a position of less pay and responsibility. 469 S.W.2d at 133. State v. Yoakum, 201 Tenn. 180, 297 S.W.2d 635; State ex rel. Taylor v. Rasnake, 209 Tenn. 229, 352 S.W.2d 427; Blair et al v. Mayo, et al., 224 Tenn. 108, 450 S.W.2d 582.

In State ex rel. Pemberton v. Wilson, 481 S.W.2d 760 (Tenn.1972), the Supreme Court held that a transfer must be accomplished in a reasonable manner and for reasonable cause:

> "We are of the opinion that the Supreme Court, by implication at the least, has heretofore held the law to be that in every case of a transfer within the system, from one position to that of another position with an accompanying lower compensation, written charges need not be made and the transferee afforded a hearing on the charges . . . Section 49–1411 does not require such procedure. Section 49–1412 provides that no teacher shall be *dismissed or suspended* without complying with the Code sections immediately following. The term 'transferred' is not used in any of the sections following." (Emphasis in original). 481 S.W.2d at 769.

In *Pemberton,* plaintiff who was a tenured teacher and was employed as an attendance teacher in Morgan County, Tennessee, ran for the elected post of superintendent against the defendant. Following plaintiff's defeat, a rift developed between plaintiff and her fellow employees. This strained relationship resulted in the Board's transfer of plaintiff to the position of elementary classroom teacher.

Most recently, the language quoted above in *Pemberton* has been at least tempered in Gibson v. Butler, 484 S.W.2d 356 (Tenn.1972). There the Claiborne County School Board summarily transferred sixteen teachers to positions less desirable than the ones they had previously held. The Court held that those individuals tenured were entitled to charges and hearing. *In response to defendant's contention that Pemberton,* su-

pra, stood for the proposition that a transfer could be effected by a Board without a hearing, the Court distinguished the cases, stating what appears to be the present yardstick:

> " . . . [T]he Pemberton case is not controlling: there the employee was transferred under circumstances that did not amount to a demotion; here each of the three employees was transferred to a position of lesser responsibility and suffered a reduction in compensation. Each was demoted." 484 S.W.2d at 360.

A clear, sharp line between the demotion in *Butler* and a simple transfer in *Pemberton* is a difficult one to draw since the factual background of the demotions in *Butler* was not developed, but it would appear that the case at bar finds greater factual analogy to the *Pemberton* case in which the Court found a mere transfer, rather than the more recent case of *Butler,* in which plaintiff suffered a punitive demotion.

Plaintiff urges that since his position of principal of the County's largest high school was the most prestigious in the County school system, both professionally and monetarily, any reassignment to a different position within the system would necessarily constitute a demotion. This thesis artifically strains the deprivation concept originally set forth in *Roth* and *Perry* in the absence of clear evidence of reprisal or punitive demotion.

In determining whether the Board's transfer action in this instance constituted a taking of plaintiff's property interest without due process, it is helpful to focus on the Supreme Court's language in Board of Regents v. Roth, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L. Ed.2d 548 (1972) that emphasizes the lasting effect of the State's conduct in depriving the plaintiff of future employment opportunities:

> "The State, in declining to rehire the respondent, did not make any *charge* against him that might seriously damage his standing and asso-

ciations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality . . . For '[W]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.'" (Citing cases) 408 U.S. at 573, 92 S.Ct. at 2707.

Accordingly, it is significant to note that in this case, the Board's action, since it appeared to effect a routine transfer, rather than a disciplinary demotion based on clear misconduct, did not serve to injure plaintiff's reputation in the teaching community. This is evidenced by the fact that plaintiff was able to relocate himself in the Knox County system with relative ease.

■ The Court has reviewed the record in this case closely and, construing the evidence and testimony in a light favorable to the plaintiff, it is the opinion of the Court that defendant's action in this instance constituted a routine transfer of personnel within a school system in the interest of administrative efficiency and did not amount to a punitive demotion or a deprivation of property within *Roth* and *Perry*. It would appear that the Board in this instance from March 5 until July 1973 did not actively seek to relocate plaintiff because it would not know until July 16, 1973 whether the proposed position of Vocational Education Director was to be funded. Although the Court construes defendant's action in this instance to have amounted to a routine transfer, it should be emphasized that a transfer held in abeyance should not be used as a subterfuge for what in fact amounts to a demotion, in which case a teacher must be accorded procedural due process.

■ In closing, although alone not dispositive of this case, the Court notes that plaintiff has not suffered a significant salary loss in the process of relocating. The difference in plaintiff's per month earnings in his former Sevier County position and his present Knox County position is minimal at best. The additional transportation costs incurred by plaintiff in driving from his home in Sevier County to Doyle High School in Knox County appear rather inflated. These facts are sufficient to show plaintiff was not demoted in the proposed transfer.

In light of the above conclusion, it is not necessary for the Court to examine the issue whether plaintiff waived any formal right to a hearing.

Accordingly, it is ordered that plaintiff's action be, and the same hereby is, dismissed.