Elmer McCARTER

v.

**Paul Douglas GODDARD, Jr., Chairman of the Jefferson County Beer Board Committee et al.**

Supreme Court of Tennessee.

Dec. 8, 1980.

T. E. Forgety, Jr., Dandridge, for petitioner–appellee.

William H. Goddard, Strand & Goddard, Dandridge, for respondents–appellants.

## OPINION

DROWOTA, Justice.

This is an appeal from a judgment of the Chancery Court of Jefferson County ordering the appellant Jefferson County Beer Board to issue a permit for the retail sale of beer to the appellee.

The appellee, Elmer McCarter, filed his application for a permit to sell beer for off premises consumption with the appellant Beer Board on September 25, 1979. On October 15, 1979, the appellee appeared before the Board to testify in connection with his application. In the initial phase of the hearing, appellee answered a number of questions asked by his attorney designed to establish his qualifications for the permit. At the conclusion of these questions, the appellee's attorney moved that the Board issue the permit. The Board then began to cross–examine the appellee. Their first question concerned the existence of any restrictions against the sale of beer in the subdivision in which the proposed beer outlet was located. The appellee answered that there were none. A Board member then asked counsel for the Beer Board whether the building to be used by the appellee met the county subdivision regulations for building setback lines. Counsel for the appellee objected that this line of questioning was irrelevant in a Beer Board proceeding. Nevertheless, the Board continued to ask questions concerning the setback regulations until a motion to table the application was made and passed. The Board asked the appellee to reappear at their next quarterly meeting to be held the following January. The appellee instead chose to petition the Chancery Court for a writ of certiorari to review the action taken by the Board in a trial de novo. The Board moved to dismiss the petition on the ground that the action of tabling is not subject to the writ of certiorari. Appellee contended, and the Chancellor held, that the writ could be granted to review any affirmative action, including tabling, taken by the Board. On December 13, 1979, a trial de novo was held before the Chancellor. At the conclusion of the trial, the Chancellor, finding that the appellee met the licensing requirements, ordered the Board to issue the permit. The Board now appeals this decision.

The first and primary issue raised by the Board is whether the Chancellor erred in granting the writ of certiorari after the Board tabled the appellee's application until its next meeting.

Judicial review of the actions taken by county beer boards is governed by T.C.A. § 57–5–109(d), which provides as follows:

> The action of such agency in connection with the issuance of any order of any kind, including the revocation of a license or permit or the refusal to grant a license or permit under §§ 57–5–105, 57–5–108 and this section, may be reviewed by statutory writ of certiorari, with a trial de novo as a substitute for an appeal, said petition of certiorari to be addressed to the circuit or chancery court of the county in which any such order was issued.

The dispute between the parties is centered upon the interpretation of the term "any order." The Board takes the position that the term "any order" should be interpreted to mean final order. This interpretation would limit the certiorari jurisdiction of the circuit and chancery courts to those cases in which a beer board has rendered a final disposition of an application. The appellee contends that the term "any order" permits the courts to review by certiorari any affirmative action, including the tabling of an application for any reason.

Preliminary to this issue, however, is the question of whether the act of tabling an application is an order at all. According to Robert's Rules of Order, the procedural rules governing the appellant Beer Board, when a motion is made to table a question, it must immediately be brought to a vote.[1] The motion is undebatable, and a simple majority vote is sufficient to pass it. Once a question is tabled, it remains on the table until affirmative action is taken to remove the question from the table. In a body with quarterly sessions, the question must either be taken from the table at the next meeting or be treated as refused. If the question is taken from the table, it may not be retabled unless material progress is made on the question or an unforeseen urgent matter appears requiring immediate attention.

Our inquiry into the nature of the act of tabling indicates that as a general rule the party whose question is tabled is subject to nothing akin to an order. In *United States v. Illinois Central R. Co.*, 244 U.S. 82, 37 S.Ct. 584, 61 L.Ed. 1007 (1917), the Interstate Commerce Commission entered an "order" giving notice of a hearing upon an issue of reparations. In holding that the district court had no jurisdiction to hear an appeal of the order, the Supreme Court said that

> ... the alleged order was nothing more than notice of a hearing which the railroad company might attend or not, as it saw fit.
>
> The notice, therefore, had no characteristic of an order, affirmative or negative. It was a mere incident in the proceeding, the accident of the occasion,—in effect, and, it may be contended, in form, but a continuance of the hearing. The fact that the continuance was to another day and place did not change its substance or give it the character described in *Procter & G. Co. v. United States* [225 U.S. 282, 32 S.Ct. 761, 56 L.Ed. 1091]—one which constrained the railroad company to obedience unless it was annulled or suspended by judicial decree.

37 S.Ct. at 587.

The action of tabling can be similarly characterized. To table a question is in form and in effect a continuance. Unlike an order, it neither permits nor denies anything to the party whose question is tabled. It is simply a matter of procedure necessary to the administrative body employing it. Insofar as the tabling action functions as a notice of a continuance, it is not an order and a writ of certiorari under T.C.A. § 57–5–109(d) cannot be granted.

We recognize, however, that under certain circumstances the tabling action can operate as a final order. For instance, if a board needlessly prolongs an application, the board has in effect denied the application. *See City of Murfreesboro v. Fortner*,

[1] This discussion of the motion to table follows H. Robert, Robert's Rules of Order 104–111 (Rev.ed. 1971).

570 S.W.2d 859 (Tenn.1978). Likewise, if a board tables an application for reasons completely extraneous to the qualifications of an applicant such that further pursuit of a permit through administrative channels would be futile, then the courts should grant the writ of certiorari. *Cf. Blair v. Mayo*, 224 Tenn. 108, 450 S.W.2d 582 (1970).

After reviewing the record in the instant case, we are convinced that the tabling action amounted to a final determination to deny the appellee a permit to sell beer. At the hearing before the Board, the Board members limited their questions exclusively to the matter of the conformity of the appellee's building to county setback requirements found in the plat of the subdivision in which the appellee's property lay. This Court has repeatedly held that a county beer board must issue a license to anyone who meets the requirements laid out in T.C.A. § 57–5–105. *Howard v. Willocks*, 525 S.W.2d 132 (Tenn.1975), and cases there cited. They may not prescribe conditions for the issuance of a permit in addition to those set out in the statute. In *Lones v. Blount County Beer Board*, 538 S.W.2d 386 (Tenn.1976), this Court held that one matter over which beer boards have no jurisdiction is the question of land use restrictions in the title to an applicant's property. Appellant Beer Board clearly acted in excess of its authority when it tabled the appellee's application in order to consider the setback regulations. Moreover, and this factor is critical to our holding, counsel for the appellee raised his objection in a timely manner when the Board took the setback problem under consideration. Under these circumstances, the Chancellor was correct in granting the writ of certiorari.

The next issue presented by the Board is whether a functionally completed building is required prior to the issuance of a permit to sell beer. The Board's presentation of this issue is premised on its contention that the appellee's building was not complete at the time of the initial hearing. In reviewing a judgment of a trial court in cases involving beer permits, the evidence before the beer board is of no consequence, since the matter is heard in a trial de novo in the circuit or chancery court. *Lones v. Blount County Beer Board, supra,* at 387. At the time the Chancellor heard this case, the building was complete. The issue is now moot.

The final issue presented by the Board is whether the application was subject to rejection because it contained a false statement. The application originally submitted to the Board stated that the appellee had no partners. At this time, the appellee was discussing a partnership arrangement with Mrs. Helen Broyles, but no money had as yet changed hands. Mrs. Broyles subsequently became a partner, although the appellee was to remain in charge of the actual operation of the business. At the hearing before the Board held three weeks later, the appellee fully informed the Board of the arrangements made since the filing of the application. Under these facts, we hold that the appellee did not falsify his application.

The judgment of the Chancellor is affirmed and the costs of this appeal are taxed to appellant.

BROCK, C. J., and FONES, COOPER and HARBISON, JJ., concur.