Dr. Wallace VERBURG, Respondent,

v.

KANSAS CITY SCHOOL DISTRICT
et al., Appellants.

Dr. Thomas DREILING, Respondent,

v.

KANSAS CITY SCHOOL DISTRICT
et al., Appellants.

Nos. KCD 29234, KCD 29233.

Missouri Court of Appeals,
Kansas City District.

Oct. 30, 1978.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 27, 1978.

Application to Transfer, Out of Time,
Denied Feb. 13, 1979.

John R. Phillips, D. Brook Bartlett, Jay
M. Shapiro and John K. Brungardt, Kansas
City, for appellants; Blackwell, Sanders,
Matheny, Weary & Lombardi, Kansas City,
of counsel.

Thomas J. Cox, Jr., Kansas City, for respondents.

Before WELBORN, Special Judge, Presiding, HIGGINS, Special Judge and
PRITCHARD, J.

PRITCHARD, Judge.

The dispositive issue in these consolidated appeals is whether respondents were entitled to procedural due process of law in their demotions from their positions as professional employees of appellant.

The trial court held that respondents were not granted a hearing to protest their demotions and present their grievances, following the procedure they were instructed to follow by their superiors [Grievances, Regulations and Procedures, adopted 11/20/73], and ordered them reinstated to the ranks and positions they occupied prior to October 14, 1974, with judgment for back salaries.

Respondent Verburg, a psychologist in charge of psychological services, with a title of district coordinator, for the 1974–1975 school year, had been continuously employed by appellant since 1957 under contract for each year. On October 14, 1974, he was given a letter by Robert J. Ward, Director of Personnel, stating that as a result of the reorganization of the District's administrative staff, his status was changed from District Coordinator—School Support and Development to Specialist II—Psychological Services—Special Education. His immediate supervisor was designated to be Ms. Marjory Farrell. Respondent Dreiling was first employed by appellant in 1968, and he was a school psychologist. He also received a letter of October 14, 1974, stating that because of the district reorganization of administrative staff, his status was changed from Specialist III—School Support and Development to Consultant—Psychological Services, and his immediate supervisor was designated to be Dr. Wallace Verburg who had been his supervisor previously.

Both respondents then in the ensuing months pursued the four level steps of the employee grievance procedures. Step Three of these procedures requires that the superintendent or his deputy shall hold a hearing in the matter. Step Four, being an appeal to the Board of Directors, provides that it may, at its option, hold a hearing in the matter. Although respondents met with the deputy superintendent, no hearing encompassing the taking of evidence was had, and the superintendent denied the grievance, as did the Board of Directors, without a hearing.

Neither respondent attempted to pursue the procedures of § 168.101.6, RSMo (Laws of Missouri, 1973, H.B. 151, pp. 277, 278), nor could they have because that statute expressly excepts metropolitan school districts such as appellant. That statute is mentioned in the briefs and in some of appellant's correspondence to respondents. It should be noted, however, that this statute is erroneously reported in Vol. 11, page 135, of the pocket part, V.A.M.S., as requiring only *three* years reemployment of the certificated employee.

There is nothing to indicate that either respondent was charged with or guilty of any misconduct, or incompetency or inefficiency in the performance of duties. All that appears as a reason for their demotions is that it was a result of reorganization of the district's administrative staff, as noted in the initial letters to them.

Each of respondents' 1974–1975 contracts for employment contained this paragraph: "This contract offer is extended and your acceptance of the same is with the understanding that the District may transfer or reassign individual administrators to any position within the District for which he or she is qualified. Such transfers will not result in a decrease in salary for the remainder of the 1974–75 school year." The evidence is that neither respondent suffered a decrease in salary for that contract year, nor were their duties changed.

This contract paragraph reduced respondents' expectation of continued employment in their staff positions to a mere abstract concern that they would be rehired in the same positions and at the same salaries. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), controls. There the court noted, at page 569, 92 S.Ct. at page 2705, that "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." The facts in *Roth* were that he was a political science teacher under a one-year contract, and he was not a tenured teacher because he had not been employed for four years as required by the statute. He was given notice that his contract would not be renewed, which was all that he was entitled to under University rule. The court said, 408 U.S. 566, 567, 92 S.Ct. 2704, "A relatively new teacher without tenure, however, is under Wisconsin law entitled to nothing beyond his one-year appointment. There are no statutory *or administrative standards* defining eligibility for re-employment. [Italics added.] State law thus clearly leaves the decision whether

to rehire a nontenured teacher for another year to the unfettered discretion of university officials." And further at page 575, 92 S.Ct. at page 2708, "Hence, on the record before us, all that clearly appears is that the respondent was not rehired for one year at one university. It stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another." At page 578, 92 S.Ct. at pages 2709, 2710, the court said further that the terms of Roth's employment "did not provide for contract renewal absent 'sufficient cause.' * * * [T]he terms of the respondent's appointment secured absolutely no interest in re-employment for the next year. * * * In these circumstances, the respondent surely had an abstract concern in being rehired, but he did not have a *property* interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of employment." In *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), the court noted the principles set forth in the concurrently decided *Roth* case which govern reemployment of nontenured teachers, who generally possess no constitutionally protectible interests, but remanded the case upon Sindermann's factual allegation for a determination that he had a *de facto* tenure by reason of university policies—a situation which does not here exist.

Considering the contractual provision, above noted, which amounts to an administration standard of reemployment, to which respondents acceded in accepting their contracts, respondents have no constitutionally protectible right which would entitle them to the procedural rights of a statement of reasons for demotion and a hearing thereon. All that appears is that respondents were reassigned in their administrative position in accordance with their contracts, which appellant followed. Compare *Coe v. Bogart*, 377 F.Supp. 310 (E.D.Tenn.1974), aff'd 519 F.2d 10 (6 Cir.), where a teacher was transferred pursuant to the authority of a Tennessee statute [as contrasted to the contractual authority here], the District Court

holding that the school district's action constituted a routine transfer of personnel within the school system in the interest of administrative efficiency which did not amount to a punitive demotion or a deprivation of property.

The judgment is reversed.

All concur.