Dr. Coby SMITH and Lee V. Powell, Appellants,

v.

STATE TECHNICAL INSTITUTE AT MEMPHIS, et al., Appellees.

Supreme Court of Tennessee, at Jackson.

Dec. 31, 1984.

John A. Donald, Memphis, for appellants.

William M. Leech, Jr., Atty. Gen., R. Stephen Doughty, Deputy Atty. Gen., Nashville, for appellees.

## OPINION

FONES, Justice.

This civil action arises under the teachers tenure law applicable to state special schools, promulgated by the State Board of Education pursuant to authorization contained in Public Acts of 1967, chapter 210, codified as T.C.A. § 49-5-515, and is before this Court for review pursuant to T.C.A. § 49-5-513(i), which provides that appeals by tenured faculty upon dismissal "shall be heard on the transcript of the record from the chancery court."

Appellants, Dr. Coby Smith and Mr. Lee Powell, were tenured administrative employees of State Technical Institution at Memphis [hereinafter STIM]. Dr. Smith was Division Head, Planning and Development, and he coordinated and implemented various programs at STIM, calling on and being apprised of the needs of local businesses and developing programs to meet the needs of those businesses. Mr. Powell served as Department Head of Community Relations, and his duties included calling on industry and public and private organizations for the purpose of establishing training classes in order to meet the needs of these organizations for qualified personnel.

Mr. Charles Whitehead, President of STIM at the time of trial, and Dr. Warner Dickerson, former Director of Administrative Affairs, testified that prior to the notification to appellants on April 28, 1980, that their positions were to be abolished, it had become apparent to the STIM administration that funds appropriated by the General Assembly for fiscal year 1980–81 would be insufficient to meet all anticipated expenses. Governor Alexander had initially submitted a budget to the Legislature that President Whitehead believed would be sufficient to maintain the status quo with respect to the number of staff at STIM. A second budget subsequently submitted to the Legislature, however, significantly reduced the proposed appropriation for STIM. The final appropriations bill provided for a $64,100 increase in funding for fiscal year 1980–81 and mandated a reduction in force statewide of 3,000 positions.

President Whitehead concluded that with mandatory pay increases and increased operating costs due to inflation, the modest increase in funding approved by the General Assembly would not be sufficient to maintain the existing number of staff at STIM. To alleviate these financial constraints, President Whitehead instructed his executive committee members to recommend positions in their respective divisions that could be eliminated and without which STIM could still function efficiently. Included among the nineteen recommended positions that could be eliminated were the positions occupied by appellants. Not only were appellants' positions eliminated, but their respective divisions were also abolished,[1] with the duties previously performed in their positions being divided among the remaining staff, some of whom were non-tenured personnel in other departments.

Appellants first assert that the retention of these non-tenured personnel was improper, and that appellants, as tenured personnel, should be allowed to "bump" these employees from their positions. It is important to note that at the time these decisions that affected appellants were made, the only written policy statement of the State Board of Education with respect to the method of selection of positions to be

---

1. Mr. Powell was the only person in his department. Dr. Smith's division consisted of only himself and his secretary.

abolished was contained in Tennessee Department of Education Rule 0520–2–2–.09, adopted by the Board pursuant to T.C.A. § 49–5–515. Rule 0520–2–2–.09 provides that:

No teacher shall be dismissed, demoted, or suspended except as provided in these rules and regulations. The cases for which a teacher may be dismissed are as follows: incompetence, inefficiency, neglect of duty, conduct unbecoming to a member of the teaching profession, and insubordination. *A teacher's or administrative officer's services may be terminated at any time in case his office or position shall be discontinued.* (Emphasis added.)

Appellants contend, however, the emergency rules promulgated by the State Board of Education are controlling, and the emergency rules mandate that a tenured teacher be given preference over a non-tenured teacher when budgetary considerations require abolition of positions. The emergency rules specifically state that the effective dates of the rules are from June 24, 1980 to October 20, 1980. Appellants were given notice by STIM that their positions were to be abolished on April 28, 1980, and the Board approved the abolishment of the positions on June 13, 1980. Therefore, the emergency rules were only effective *subsequent* to the date that the Board acted to approve the recommendation by STIM. Even if these rules were to be given retroactive effect, STIM and the Board acted properly in their selection of the positions to be abolished under the applicable provisions of the rules. Emergency Rule 0520–2–3–.01(1) provides that: "If the reduction in force is due to budgetary requirements the priority for selecting positions to be discontinued is in the following order: (a) Administrative personnel, (b) Non-teaching professionals, (c) Clerical and support personnel, [and] (d) Teaching faculty." Furthermore, the factors outlined in 0520–2–3–.01(4) of the Emergency Rules were considered before the decision as to the necessary abolishment of positions was made. There is nothing in the record that indicates STIM had anything other than "sufficient, just, and non-discriminatory reasons" for the bona-fide elimination of the positions which appellants held, and its action was, therefore in accord with Department of Education Rule 0520–2–2–.01(10) and T.C.A. § 49–5–501(1).

■ Appellants also assert that STIM and the State Board of Education violated principles of fundamental fairness by retaining certain non-tenured personnel in other functional areas, and in support of their contention they rely on *State ex rel. Chapdelaine v. Torrence,* 532 S.W.2d 542 (Tenn.1975). In *Chapdelaine,* a tenured university professor challenged his dismissal without a hearing and sought back pay and reinstatement. The Court stated:

When any educational institution is required for any reason to reduce its teaching force, a decent regard for the spirit and purpose of the tenure laws and for fundamental fairness demands that non-tenured teachers be first dismissed followed by tenured teachers in the order of their seniority, with due regard being given to certifications and other controlling circumstances. 532 S.W.2d at 549.

*Chapdelaine* is, however, distinguishable from the circumstances of the present case. The *Chapdelaine* holding was limited to those situations in which the statutorily required hearing was denied or in which a teacher was terminated without written charges. Neither such condition is present in the instant case. Furthermore, plaintiff in the *Chapdelaine* case was a faculty member in the mathematics department of Tennessee State University, whereas plaintiffs in this case were administrative personnel who were not involved in the day-to-day teaching of the curriculum offered at STIM. The Court in *Chapdelaine,* even though back pay was awarded, declined to order reinstatement, specifically noting the fact that "budgetary limitations forced a decrease in personnel." 532 S.W.2d at 549. The apparently broad directive in *Chapdelaine* regarding priority for tenured instructors was also qualified by language of the Court that "other controlling considerations" may be present, and the expansive interpretation that appellants attempt to

give to the *Chapdelaine* decision is not merited under the facts of this case.

Appellants also argue that they should have been given preference for any position at STIM that was to be filled during the current school year or the school year immediately following their termination, if such person meets the minimum requirements for such position. State Board of Education Rule 0520–2–3–.01(5). Although the rule does provide this preferential treatment, there was unrebutted evidence that there were no vacant positions during the 1980–81 school year for which appellants possessed the necessary qualifications.[2] Although a position held by a Mr. Swearengen (similar to the position that had been occupied by Mr. Powell) became vacant, that position could not be filled because of an impoundment of funds by the Tennessee Department of Finance and Administration, which necessitated still further staff reductions by STIM. With respect to an English teaching position held by a Ms. Shotwell, the record reflects that her employment was justified as she was already a tenured faculty member at STIM, with more seniority than either of appellants. Furthermore, she was qualified for this position, and neither of appellants possessed the required qualifications for this position. Finally, the filling of Dr. Dickerson's position in the fall of 1981 occurred during the 1981–82 school year, after the expiration of the time period during which appellants, by Board rule 0520–2–3–.01(5), would be given preference.

As noted in *Potts v. Gibson*, 225 Tenn. 321, 469 S.W.2d 130 (1971), review of the dismissal of a tenured teacher is de novo with a presumption of the correctness of the chancellor's decision unless the evidence preponderates against the findings of the chancery court. The evidence in this case does not preponderate against the chancellor's findings, and we must, therefore, affirm. Costs are adjudged against plaintiffs.

COOPER, C.J., and BROCK, HARBISON and DROWOTA, JJ., concur.

---

2. Appellants were terminated during the school year 1979–80, albeit at the very end of that year, and they do not contend that any positions were available during that period.